# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

Richard A. Chylinski              ,
                  Plaintiff,

    v.                                          Case No. 3:08CV322 (JCH)
                                                (To be supplied by the Court)
Bank of America, N.A.             ,    Mr. Mark G. Leonard, Ms. Donna Spicer, Ms. Beverly Haynes
              Defendant(s).            Mr. Mark Noble, Ms. Bianca Bingham
*see attachment

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

1.    Plaintiff resides at the following location: 35 Santo Court

    New Britain, CT 06053

2.    Defendant(s) reside(s) at the following location [Attach additional sheets if more

space is required]: Bank of America Corporate Center

    100 North Tryon Street

    Charlotte, NC 28255

3.    This action is brought pursuant to [Check all spaces that apply to the type of

claim(s) you wish to assert against the Defendant(s)]:

✓    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et
     seq., for employment discrimination on the basis of race, color, religion, sex, or
     national origin.  Jurisdiction is specifically conferred on this Court by 42 U.S.C. §
     2000e-5(f).  Equitable and other relief is sought under 42 U.S.C. § 2000e-5(g)
     and the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

____    Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621,
        et seq., for employment discrimination based upon age.  Jurisdiction is alleged
        pursuant to 28 U.S.C. §§ 1331, 1337, and/or 1343.  Equitable and other relief is
        sought under 29 U.S.C. §§ 626(b) and (c) or   §§ 633a(b) and (c).

        My Date of Birth is: _____.

____    Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701, et seq., for
        employment discrimination on the basis of a disability against an employer which

Defendants,

Mr. Mark  G. Leonard ; Bank of America, 70 Batterson Park Rd, Farmington, CT 06032

Ms. Donna  Spicer ; Bank of America , 70 Batterson Park Rd , Farmington, CT 06032

Ms. Beverly  Haynes ; Bank of America , 70  Batterson Park Rd, Farmington, CT 06032

Mr. Mark  Noble ;  Bank of America Corporate , 100 North Tryon Street , Charlotte, NC 28255

Ms. Bianca  Bingham ;  Bank of America , 70 Batterson Park Rd, Farmington , CT 06032

Richard  A.  Chylinski   v.  Bank of America , N.A.

constitutes a program or activity receiving Federal financial assistance. Jurisdiction is asserted under 28 U.S.C. §§ 1331, 1337 and/or 1343. Equitable and other relief is sought under 29 U.S.C. § 794a.

_____   Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101, et seq., for employment discrimination on the basis of a disability against a private employer. Jurisdiction is specifically conferred on this Court by 42 U.S.C.§ 2000e-5(f). See 42 U.S.C. § 12117(a). Equitable and other relief is sought pursuant to 42 U.S.C. § 2000e-5(g). Id.

4.    The acts complained of in this suit concern [Check all spaces that are applicable to your claim(s)]:

   (A)   _____   Failure to hire me. I was refused a job on the following

                  date(s): _____.

   (B)   ✓        Termination of my employment. I was terminated from my

                  employment on the following date: _05/24/2006_.

   (C)   _____   Failure to promote me. I was refused a promotion on the

                  following date(s): _____.

   (D)   _____   Other acts as specified below:

_____

_____

_____

_____

5.    The conduct of the Defendant(s) was discriminatory because it was based upon:

race [ ], color [ ], religion [ ], sex [X], age [ ], national origin [X] or disability [ ]. [Please

check all applicable bases for your claim of discrimination and explain further, if

necessary]: ____* see attachment_____

_____

6.      The facts surrounding my claim of employment discrimination are as follows [Attach additional sheets, if necessary]:

__*   see attachment__

7.      The approximate number of persons who are employed by the Defendant employer I am suing is: _203,425_ .

8.      The alleged discrimination occurred on or about the following date(s) or time period: 12/06/05 – 05/24/2006 .

9.      I filed charges with the:

        _X_     Equal Employment Opportunity Commission

        _X_     Connecticut Commission on Human Rights and Opportunities

10.     The Equal Employment Opportunity Commission issued a Notice of Right to Sue letter **(copy attached)**, which I received on or about the following date: _____.
[**NOTE:** If you filed charges with the EEOC or the CHRO, you **MUST** attach a copy of the Notice of Right to Sue letter for this Court to consider your claim(s).  Failure to do so may result in delaying consideration of your claim(s).]

3

11.    The EEOC or the CHRO determined that there was no probable cause to believe

that  discrimination occurred.  My reasons for questioning that

determination are as follows [Attach additional sheets, if necessary]: _*CHRO  Final*_
_*Action  was  arbitrary  and  capricious.  Specific (witnesses) identified*_
_*in the witness list were not properly exhausted by the CHRO.*_
_____              _____ *(SEE ATTACHMENT)*

12.    If relief is not granted, I will be irreparably denied rights secured under the law(s)

referred to in Item Number 3, above.

13.    WHEREFORE, Plaintiff(s) pray(s) that:

The Court grant such relief as may be deemed appropriate, including [**NOTE:**  While all

of the forms of relief listed below may not be available in a particular action, you should

place a check next to each form of relief you seek.):

        ✓    Injunctive orders (specify the type of injunctive relief sought): _____
        _____ *Apprehended  violence  order  ( AVO)* _____;

        ✓    Backpay;

        ✓    Reinstatement to my former position;

        ___    Monetary damages (specify the type(s) of monetary damages sought): ___
        _____;

        ___    Other (specify the nature of any additional relief sought, not

otherwise provided for on this form): _____

        _____;

        AND costs and attorneys' fees.

4

## JURY DEMAND

I hereby DO __X__ DO NOT _____ demand a trial by jury.

_____
Original signature of attorney (if any)

_____
Printed Name

_____

_____

( )_____
Attorney's full address and telephone

_____
Email address if available

*Richard A. Chylinski*
**Plaintiff's Original Signature**

*Richard A. Chylinski*
Printed Name

*35  SANTO  COURT*

*NEW  BRITAIN , CT  06053*

*(860)  223-0044*
Plaintiff's full address and telephone

*rchylinski@hotmail.com*
Email address if available

Dated: __02/28/2008__

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he/she is the plaintiff in the above action, that he/she has read the above complaint and that the information contained in the complaint is true and correct.  28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed at __Hartford, CT__ on __02/29/2008__ .
　　　　　　　　(location)　　　　　　　(date)

*Richard Chylinski*
**Plaintiff's Original Signature**

(Rev. 8/25/04)

5

**RETURN RECEIPT REQUESTED – CERTIFIED MAIL**

September 27, 2007

Mark C. Noble
Employee Relations Case Manager
Bank of America
900 West Trade Street
Charlotte, NC 28255

RE:           **Case Name:**    **Richard A. Chylinski v. Bank of America**
                 **CHRO No.:**     **0710155**
                 **EEOC No:**      **16A200700266**

Regards,

*Richard Chylinski*

Richard A. Chylinski
Complainant

Enclosure

cc:      Epifanio Carrasquillo
          William Callahan
          R.M.D Chylinski

September 27, 2007

Mr. Epifanio Carrasquillo
Manager, Capital Region
State of Connecticut
Commission on Human Rights and Opportunities
999 Asylum Avenue
Hartford, CT 06105

RE:          Case Name:     **Richard A. Chylinski v. Bank of America**
             CHRO No.:      **0710155**
             EEOC No:       **16A200700266**

Dear Mr. Carrasquillo:

    Amended complaint pursuant to initial complaint <u>CHRO Case No. 0710155.</u>

The Complainant, Richard A. Chylinski, additionally charges that the Respondent terminated the Complainant as to the Complainants National Origin/Ancestry (Polish) in violation of Title VII of the Civil Rights Act of 1964.

Regards,

*Richard Chylinski*

Richard A. Chylinski
Complainant

cc:     Mark C. Noble – Bank of America
        William Callahan – CHRO, Human Rights Referee
        R.M.D Chylinski

3

September 24, 2007


Mr. Epifanio Carrasquillo
Manager, Capital Region
State of Connecticut
Commission on Human Rights and Opportunities
999 Asylum Avenue
Hartford, CT 06105


| SUBJECT: | Case Name: | **Richard A. Chylinski v. Bank of America** |
|---|---|---|
| | CHRO No.: | 0710155 |
| | EEOC No: | 16A200700266 |

RE:        **NO REASONABLE CAUSE/ADMINISTRATIVE DISMISSAL**
             **DETERMINATION – 09/14/2007**

Dear Mr. Carrasquillo:

As you know, I am **Richard A. Chylinski ("the Complainant")** in the above captioned matter. Based on my recent review of the entire file dated September 7, 2007 and prior to final resolution in **CHRO NO: 0710155**.


I have been granted the opportunity to comment on the final draft summary prepared by the investigator and the Commissions finding: Dismissed for No Reasonable Cause concerning the above matter.


The Commission through the assigned Human Rights Representative, **Mr. William Callahan** has submitted a **draft summary** and a **final action** of **NO Reasonable Cause Finding**. Additionally the Commission has taken final action in the complaint dated September 14, 2007, by issuing a letter to the Complainant stating that the Commission has completed the processing of the complaint and the complaint has been closed today (09/14/2007) as: **Dismissed for No Reasonable Cause – On The Merits**. I have been instructed by the Commission to apply for reconsideration of the deposition by filing this request at the Commission's Regional office at 999 Asylum Avenue Hartford CT 06105. The foregoing includes my comments, enclosed witness list; additional exhibits admitted into evidence and the Complainant guiding the Commission as to the ERROR(S) and misstatements as relevant in the written final summary of the findings as a result of its investigation.


Therefore, I as the Complainant ask for reconsideration of the finding as a result of the application submitted by the investigator, William Callahan, whereby the investigator concluded that there does not exist reasonable cause for believing that a discriminatory act had occurred.

4

According to law in consideration of the circumstances in which the court would apply in relation to my case mentioned above consideration of C.G.S. 46a-58(a), 46a-60(a)(4), and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e.

Whereby the Commission has authority and the discretion mandated by both General Statutes 46a-58(a), 46a-60(a)(1),(4), and Title VII of the Civil Rights Act of 1964 and Regulations of Connecticut State Agencies **§46a-54-95,** to resolve the above matter and find where deemed the appropriate remedy.

The Respondent was to provide witness(s) names and addresses to the Commission, opposing counsel and the Complainant. As of this writing the Complainant has not received nor viewed the requested required documents either through postal mail or by inspection of the said record on September 7, 2007 on file at the Commission place of business. The specific production of record was required due to the Commission and the Complainant on or before July 31, 2007. As duly noted and emphasized: **Failure to file an answer may result in an order of default in accordance with §46a-54-95 of the Regulations**.

In respect to Conn. Gen Statutes and administrative policies, I bring notice and make light of the fact that the Respondent the *Bank*, had earlier failed initially to provide the Commission and the Complainant its initial answer to the charge. The answer was submitted late both in its first required 30-day response, unduly late, after being granting a 15-day extension. **The Commission received the answer on January 8, 2007 according to records**. The Bank received notice of the initial charge of discrimination as set in the complaint on the week of November 13, 2006. I ask the Commission to proceed with caution and in respect to credibility as to unknown, undocumented, questionable facts arising in the Banks limited and equally questionable personal knowledge it has obtained through sources in dispute as set forth by the complaint.

As the Commission begins its diligent unbiased role in gathering the facts, including all relevant information taken into account and reviewing the Banks answer a.k.a. ("Banks" Initial Statement of Position) to the charge and subsequent relevant data provided. Rigorous digesting along with particular attention weighed to the credible data, authenticated data, testimony and sworn statements on record should be pursued with caution.

5

- The Respondent failed to produce any witness(s) address and contact information to the Commission and to the Complainant by the stated date July 31, 2007.

- I contacted the Respondent week(s) prior to the Fact-Finding hearing August 7, 2007 as well as, after the hearing, both by fax and telephone. Neither the witness address(s) nor contact info was provided; in addition, there was no follow-up or return call from the Respondent.

- The Respondent **violated Rules of Professional Conduct. The Bank, represented by <u>Mr. Mark C. Noble is ultimately responsible to the client and assumes complete professional responsibility for the work product.</u> Mr. Noble attesting to the truth of the matter, Bank, [Statement of Position] and the contents sworn in on January 4, 2007 in North Carolina Mecklenburg County through acknowledging the signed and verified documents in the presence of <u>R. Kim Abernathy a Notary Public for the said County and State.</u>**

- **The Respondent, Bank representative Case Manger Mark C. Noble failed to <u>notify the Commission IN WRITING that his telephone number changed and he did not notify the Commission immediately, IN WRITING.</u> It is the Respondent's duty to comply as set forth by the Commission's Duty to Cooperate Form 002.**

- The Respondent, by way of opinionated testimony by Mark C. Noble **demonstrated a heightened lack of diligence** in his concluding of the answer as submitted by the Bank, it's *Initial Statement of Position,* excluding pertinent and requested information as set by the Commission in furnishing **"Schedule A"** – <u>Employment Request for Information</u> to the Respondent. This requested information of the Respondent is not complete as concerned to the matter before us and prepared by the Respondent in the *Statement of Position*; this is a burden for the Commission and to the Complainant in resurrecting any true factual investigation and deciding a fair conclusion. Therefore the proof as to the more convincing evidence is not sufficient and holds less weight as to the specifics required by the Commission in **"Schedule A"**. <u>The content, produced by the Bank, as to the facts for consideration by the Commission to be relied on in the</u>

investigative file **IS NOT SUFFICIENT** to support a finding in favor of the Bank. The Respondent's explanation **IS NOT** credible; including the testimony provided by the Respondent witnesses **IS NOT credible** as to the facts of the matter. **No substantial and preponderance** of the evidence was **authentically** presented by the Bank substantiating the Banks position. The Bank introduced disputed facts, no signed statements including no sworn affidavits as to the witnesses appearing on behalf of the Bank. Ironically, new allegations fabricated and charging the Complainant, **RICHARD A. CHYLINSKI**, as being accused as **"threatening in bodily movement"**, whereby, the Complainant "suddenly lunged" upon a named member of the Banks senior management team, as alleged by Ms. Donna Spicer asserted in testimony on 08/07/2007.

This new fact on record first realized and entered into evidence at the recent fact finding hearing was not discussed nor emphasized nor stated by the *Banks* thorough investigation process in which the witness Ms. Donna Spicer does not swear to in a affidavit nor makes note of the alleged threatening **"lunging motion"** accusing the Complainant in her comment(s) submitted in the *Initial Statement of Position* which was submitted by the Bank in January 2007 to the Commission and to the Complainant as truth to the matter. However, this is testified too at the hearing on 08/07/2007 by Ms. Donna Spicer.

In answering the question is the Respondent's explanation factual? Complainant responds and it is noted by the Complainant that he asserts it is a false statement and the accusation by Ms. Spicer is false.

As of August 7, 2007, the Commission may consider and reasonably assume that the lack of preponderance of evidence is tilting absent truth as to the matter at hand, as the Respondent is, and the record reflects, is misrepresenting.

**Reasonable suspicion is inferred and rightly so in said testimony by the Respondent, specifically Ms. Spicer.**

**Hereby ("the Complainant"), <u>RICHARD A. CHYLINSKI</u>, is attesting in documenting that the allegation asserted in communication and by way of testimony by Ms. Donna Spicer and confirmed by Mr. Mark Leonard is in fact <u>false</u> and entirely misleading to the Commission, according to the Complainant.** This alleged unfounded fact is prejudicial error. The allegation is prejudicial to the Complainant on its merits.

7

<u>As a result, reason should be granted for further examination and signed
signature witness statements and supporting affidavits.</u>

Therefore, the Commission when digesting the direct testimony taken into
account and analysis of the Banks witnesses appearing on behalf of the Bank,
*specifically Banking associate(s) Team Leader Mark G. Leonard, Donna Spicer,
including, Team Unit Leader Ms. Beverley Haynes* are disputed and are issues of
facts unresolved. The burden rests on the Commission to conjure a sufficiently
clear finding absent of sworn testimony and absent signed signature statements
as to the matter(s) in dispute.

**<u>Further sworn testimony and statements asserting the facts are required,
requesting affidavit(s) of the Respondent, specifically Ms. Donna Spicer
and Mr. Mark Leonard. Mr. Leonard who as a direct witness to the said
event, confirmed and declared the fact on record as alleged by Ms. Spicer in
testimony declared at the fact finding hearing  conference August 7, 2007 at
999 Asylum Avenue Hartford Connecticut, concerning the above
introduced allegation.</u>**

**<u>This is my formal request for further investigation to the Commission and
to the Manager, CHRO Capital Region Epifanio Carrasquillo granting the
right afforded to the Complainant in commenting on my RIGHT TO
COMMENT UPON DRAFT SUMMARY Section IV ***GENERAL
NOTICE***as defined in, ARTICLE 1, Parties Joint Rights, Duties and
Responsibilities, including, other evidence entered into the record; tape of
fact-finding conference -Exhibit D/1 entered into evidence by the officiating
investigator.</u>**

**<u>The Complainant is requiring additional investigation to the new alleged
fact presented in its entirety stated above.</u>**

**{Section 46a-59a(b) of the Regulations of Connecticut State Agencies.}**

- History indicates that the Respondent has repeatedly engaged in similar cases in
the past, and continues to do so in the present which are similar to my case in
which currently are presiding in a number of state jurisdictions, Administrative
Agency proceedings, Superior Court, United States District Court, United States
Court of Appeals, and the United States Supreme Court. Order has been made
upon the Respondent time and time again resulting in no compliance to orders

set by the courts. The Respondent has been ordered to cease and desist from the discriminatory practice(s) in the past.

The Commission has the authority and the advisable bylaws as well as the protection of matter of opinion in reaching its conclusion to **"find reasonable cause"** for the Complainant and to make the Complainant whole and to eliminate the Respondent's discriminatory practices.

> **I hereby request the Commission to reconsider their initial position and find the Respondent liable for discriminating against the Complainant in the terms and conditions of his employment and that it wrongfully discharged/terminated the Complainant based on my prior opposition to discrimination, e.g. sexually harassed, my gender, Male, national origin/ancestry (Polish) and the discriminatory retaliation subsequently thereafter.**

I move to comment and rebut the submitted final draft summary.

The Complainant objects and dismisses the Respondent claim(s) in p. 2 of the draft summary that they had a legitimate, non-discriminatory reason for the termination, namely, that the Complainant demonstrated unacceptable workplace behavior, poor performance, and had tardiness issues. **No evidence was provided or introduced** to the Commission either in the fact-finding hearing or in the initial answer *Statement of Position* submitted by the Respondent. Other than opinionated statements were sworn into record provided by the Respondent.

The Respondent wrongfully claims that the Complainant never complained about sexual harassment. It is also **incorrectly** noted by the investigator in submitting the draft summary as incomplete. **Error by both, the Respondent and investigator**, in consideration as to the truth of the facts. I argue the fact to the Commission that the Complainant entered into evidence and it is noted and entered into record **Exhibit 1**- the Complainant's initial written documentation provided to the Respondent on December 9, 2005 and December 12, 2005 to the Banks senior members of management.

On or about **[December 8, 2005]**, communication was verbal, and **[December 9, 2005]** written correspondence addressed to Mark G. Leonard. Additionally, email correspondence sent to Donna Spicer **[Exhibit 1]**. Exhibit 1 - demonstrates and substantiates that the Complainant addressed the issue *"sexual harassment"* **by**

9

<u>providing written evidence and verbal to the Respondent,</u> which included Team Leaders Mark G. Leonard, Donna Spicer and Beverley Haynes. Not as the initial draft summary states that when asked to give specific examples the Complainant failed to do so. Entering into evidence, **Exhibit 1**, and later confirmed in testimony and on cross examination of the witnesses that **Exhibit 1** in fact was entered into evidence and the *Banks* witnesses later recant that "they do recall personally viewing the document **Exhibit 1** in question later in the hearing" **(<u>Refer to tape testimony of fact-finding conference -Exhibit D/1 entered into evidence, by investigator).</u> *Also to note on the record and in rebut; let be noted that in this taped hearing the investigator is leading the witnesses when confirming and clarifying facts on record as pursuant to witnesses version of events/opinion.**

Furthermore, banks management realizing the direct cause of concern documented by the Complainant. The named individuals above arranged a meeting to address my concerns on December 12, 2005. As it is stated on record at the fact finding hearing and by way of testimony provided by the Respondent, and it's above stated witness(s), **Advice and Counsel was contacted and the issue is being taken very seriously by the bank, as Ms. Haynes testified.**

**Further fact finding by means of affidavits and interrogatories, sworn testimony, is necessary to resolve the inaccuracies of the stated facts and conflicting references to documented material before us.**

The Bank claims that they offered me coaching and feedback on my unacceptable performance and behavior prior to terminating my employment. **I disagree as to the Respondent's and investigators explanation on p. 2** in the draft summary composed by the investigator through facts asserted by the Respondent. As it is noted in my rebuttal, answer and fact-finding hearing on August 7, 2007, **the Respondent asserts that it did not engage in a non-discriminatory opportunity concerning feedback; instead, <u>the Complainant disagrees and asserts the Respondent initiated discriminatory conduct,</u> covered-up events, fabricated information, imposed by its agents, Team Leader(s) Mr. Mark Leonard, Ms. Haynes and Ms. Spicer as a direct result based on my prior opposition to discrimination.**

Including but not limited to performance reviews conducted by Mr. Leonard was adverse in its entirety since he became my supervising manger.

The Complainant will interject that Mr. Leonard commented on or about January 2006, *"if you would like to resign, I can set that into motion, but you can not terminate yourself*

10

*referring to myself unintentionally when I said that considering the circumstances and the discriminatory environment ensued by you, can I be terminated; he reiterated and clarified that "you can resign."*

Negative comments immediately following the initial complaint, both, my workspace was moved, the alleged harasser, Ms. Bingham was dismissed from employment in the preceding months and the Complainant succeeded in turn being terminated from his employment in the following months.

As noted, there was no investigation conducted as to my knowledge. **I was not interviewed nor questioned by a neutral third party, banks internal human resources, aside from discussions with Team Leader Mr. Leonard and the management staff he directly reported to.**

- Was the Complainant afforded to respond to internal investigators concerning the investigation into the accusation of sexual harassment as related to the complaint? Who was the direct contact at the Bank for the Complainant?

I was not made aware or privileged of any statements on record whether verbal or written/opinionated by the harasser, Ms. Bingham, in order for me to answer, provide clarification or rebut any inaccuracies.

**I was not contacted by HR as to an ongoing  investigation after my initial complaint.**

Where as my progressive diligent action in addressing the uncomfortable and unacceptable matter and set of events; my concerns, voicing opposition and my reasonable efforts fell on deaf ears. **When I asked for the contact name and telephone number of the Banks, Advice and Counsel** (Human Resources) **investigating the matter;** "I was told by Senior Team Unit Leader **Ms. Beverley Haynes; that no attorney or HR has ever been contacted."**

What I now know is that Ms. Haynes was merely making me assume something was actually being done or was actually reported. She may have simply been looking out for her self-interests and that of others.

11

Closely related in the weeks after I filed my initial complaint. <u>Ms. Haynes attended to lunch and conversed candidly with Ms. Bingham the alleged harasser</u> on the Banks property and in the cafeteria.

The remark referring that **<u>no one at the Banks Advise and Counsel was contacted and there was no attorney to contact in relation to your complaint</u>** was mentioned by Ms. Haynes in early May of 2006. My unresolved matter continued uninvestigated and in my opinion was silent and mute to the Bank(s) management who handle such issues. **This is reason and the numerous obstacles I encountered in my approach in resolving my matter with my immediate supervisor and management at the Banks operations in Farmington, Connecticut. Consequently, <u>I sought to seek an answer to the complaint  and outcome of the investigation.</u>** <u>Assuming that the earlier situation had been dealt with by Advice and Counsel.  I now would be able to converse and communicate with the department as to the current situation at hand in the treatment I was experiencing  negative employee reviews, retaliation and immediate supervisor Team Leader Mr. Mark Leonard stalking the Complainant through town in his vehicle after the Complainants end of work day.</u>

<u>In my attempt to reassure my assumptions, whereby, contacting a neutral position (Advice & Counsel).</u>  **<u>I was looking for clarification and feedback, if any, that Advise and Counsel would recommend me.</u>**

**(This action seeking clarification and request does not constitute nor reach the level of insubordination)**. This deliberate indifference as the matter in question I have stated earlier and in my rebuttal is and continues to be the position of the Bank.

Complainant additional rebuts and comments as relevant to statements and conclusions incorrectly stated in page 4, question 3. The Respondent, Mr. Leonard, commented at the hearing on 08/07/2007 that he first became aware of the sexual harassment complaint filed by me was when the Connecticut Commission on Human Rights and Opportunities made him aware of the complaint. (**SEE D/1 –TAPE OF CONFERENCE** as related to the draft summary. For argument purposes, momentarily setting aside on the record the:

1.   <u>correspondence,</u>

2.   **[Exhibit -1]**, and

3.   several conference meetings

12

in which the Respondent, Mr. Leonard, directly engaged with the Complainant concerning the matter. Whereby the Respondents prior to the hearing date August 2007, mention in the Banks Statement of Position submitted in, January 2007, that they deny receiving or having known any communication concerning the Complainant's **Exhibit I.** What we now know subsequent the hearing date, August 2007, in testimony, that the Respondent witness(s) in fact receive and view the document and were aware of the initial complaint in December of 2005 and do recall receiving this communication from the Complainant. Whereby, earlier in testimony at the hearing, Respondent witness Mr. Leonard originally recalls that it was not until the CHRO agency initially made contact with the Respondent in November of 2006, that there was any issue at all. However, after the Complainant introduced, Exhibit I, into record at the hearing, did the Respondent's witness(s)  Mr. Leonard, in addition, Ms. Spicer and Ms. Haynes clarify that they did in fact receive and  view the document Exhibit I, submitted by the Complainant in December 2005.  This misrepresentation goes directly to the credibility of the Respondents witness(s).

To further rebut the findings in the draft summary and substantiate the Complainant's case. <u>We now know under questioning in testimony that IT WAS NOT until the Commission first made the Respondent, Mr. Leonard, aware of the matter, in where the  Administrative Agency CHRO served the notice.</u>

- **In fact Mr. Leonard was aware of the sexual harassment much earlier since he testified to have seen the Exhibit I as established by the Complainant in December 2005 and in direct testimony provided on August 2007, and the record will so reflect.**

For argument sake precluding testimony provided prior to the hearing, including as much as ten months after Mr. Leonard was notified of the sexual harassment charge through way of the Banks Human Resources as filed by the Commission on behalf of the Complainant. Mr. Leonard was not able to provide a rational example of what constitutes harassment in the workplace. Aside from Mr. Leonard stating that as a member of the management team he participates in company training concerning sexual harassment issues.

I revert to testimony at the hearing whereby Mr. Leonard understands the term or employment related phrase, "written word", **sexual innuendos**, as he stated **"the term is vague and could mean a number of different things".** Mr. Leonard states further that; "His understanding is much different than the actual claim, that's how I separate the difference."

It is at the very least entirely irrefutable and fact of record that, **Exhibit 1,** entered into evidence as recently as August 7, 2007 at the time of the CHRO hearing and as far back as noted **Exhibit 1** (December 9, 2005) was delivered and in custody of Mr. Leonard on December 9, 2005. This original known fact as well as prior admission and documented documentation is more than a compelling reason to proceed with caution when evaluating and considering witness credibility offered by way of testimony either verbal or corroborated through representation by Bank of America delegate Mark C. Noble and the Banks witnesses.

As noted, and I readily object as to the clarification(s) and summarization interjected on behalf of the witness(s) by Mark C. Noble (Banks Case Manager) at the time of the hearing. Mark C. Noble instructed by the Respondent, Bank of America, is a biased and unreliable friend of the agency, **he did not witness what occurred first hand nor had personal knowledge of the facts of this case as to what occurred at the Farmington business location.** Mr. Noble's comments and statements are all second hand knowledge, with no direct knowledge of any communication /events/ leading to the termination of the Complainant, **it is hearsay testimony solely based on the recounting Banks witness(s) assumptions, observations, misguided interpretation, management fear (paranoia), falsely alleged allegations and fabricated forecasting as a pretext to cover-up the truthful and documented discrimination which was provided by the Complainant.** Therefore it is an ERROR and untruthful testimony as such where Mr. Leonard states that he and the Bank had no knowledge of the Complainants' complaint of sexual harassment until CHRO first served notice on the Respondent in November of 2006. **The so termed credible testimony asserted by the witness and the representative are in fact questionable and disputed as to truth to the matter.**

**The use of interrogatories and affidavits can assist the agency in furthering its fact-finding investigation and in attaining the results the Commission seeks as to determining reasonable cause finding of fact and clarification.**

As earlier stated the Respondent(s) deliberate indifference to the issues at question and the irrefutable evidence presented by the Complainant in **Exhibit I,** among others, with all things considered is or should be irritable to the CHRO, the Commission, whereby, the Respondent, and its representative(s) **are in my opinion untruthful in their responses and committing a fraud on the Commission.**

As a result of my standing and **my request for the Commission to reconsider their initial position I am bringing notice to further the Complainants cause which requires further investigation and diligent application of law including clarification**

14

**of the circumstance, including the credibility of the testimony provided by the Respondent, including banking representative(s): Mark G. Leonard, Donna Spicer and Beverley Haynes, not withstanding Mark C. Noble.**

If there is or should there be written or communicated notice such as affidavits of the above mentioned banking representatives as to their positions and answers to an investigation or interrogatories either through the diligent efforts of the Bank agent Mark C. Noble, or the Commission which the Commission has knowledge of or may become aware of. I hereby request that information of the Commission and myself. The Complainant asks the content be made readily available and copies supplied with material directly related to the case in a timely manner.

[Page 1], Draft Summary, **SUMMARY OF POSITIONS**

**Error by investigator and Respondent incorrectly** state as matter of fact that the Complainant after being transferred to another location that he was no longer near his alleged harasser.

- Irregardless of being transferred and the Complainants workstation being moved directly behind Senior Team Leader Ms. Donna Spicer. Who we now know provided in testimony at the fact-finding hearing that the Complainant allegedly "lunged" at her on May 11, 2006 while participating in a discussion with Team Leader Mr. Mark G. Leonard present.

- The alleged harasser, Ms. Bingham, continued to appear and present herself to me, *(see D/1 - Tape of Hearing)* whereby she would walk by my workstation and stand in proximity to me. Ms. Bingham would initiate a **fixed stare** and **look intently** onto me, whenever, nearby on many occasions after the initial complaint of sexual harassment and her so called instructions from the Bank via Beverley Haynes and Mr. Leonard to cease such behavior.

- I verbally commented to both Ms. Spicer and Mr. Leonard on many occasions. In a number of instances, I verbally commented to Ms. Spicer who was sitting directly behind me as to Ms. Bingham's purpose in her unwarranted visits. Ms. Spicer dismissed the comment(s) and concerns which I have raised throughout the months following the initial complaint in December 2005 – February 2006.

15

- Finally in February 2006 Ms. Spicer appeared to become agitated as to the general relevance and purpose of the alleged harasser appearing regularly unannounced and not welcomed in the department managed by Ms. Spicer, which included the Complainant, as we know now was moved to her department, as a result of the requested transfer due to the harassment.

- Ms. Spicer on several occurrences telephoned Team Leader Mr. Leonard informing him of Ms. Bingham's questionable visits to the proximate location of the Complainant. And that he (Mr. Leonard) should gain control of the alleged harasser's whereabouts when on Bank property.

**ERROR**, page. 2, top paragraph, investigator grossly error states **space heater** issue as the only content of the overall complaint. As per recorded testimony to the hearing on 08/07/2007, <u>the investigator</u>, Mr. Callahan, announces on record and makes it well known that "<u>**he does not want to discuss the space heater** *issue or topic*</u>". **(Tape of Conference).**

- However, in drafting the summary of the finding report the investigator includes and interjects on least <u>**four (4) occasions**</u> the word and term associating "**space heater**" in concluding statements of matter in deciding the case which hold great credible evidence. <u>The "space heater" term and reference is exploited by the investigator.</u> Regardless' of the fact that the <u>**investigator decided that the merits of the circumstances and discussions of the space heater will not be heard at the hearing.**</u>

**ERROR:** <u>The investigator is merely relying on the Statement of Position produced by Bank of America Employee Relations Case Manager</u>. **This error of fact is erroneously inaccurate and the lack of professional judgment by omitting already on record entered evidence where it is clearly and readily available to a reasonable, person of ordinary caution, prudent individual, such as an investigator, that when referencing sexual harassment content in** *Exhibit 1*, **it also concludes the content "space heater" referenced in** *Exhibit 1.* **As the investigative body deciding the facts** <u>the investigator is blatantly disregarding his own prejudice and omission of fact - sexual harassment is documented including the mentioning of a "space heater" in the document.</u> **These two do not interchange as respect to testimony relevant when referring to** <u>**space heater:**</u>

16

- **In the fact finding hearing. The investigator is therefore reversing the Complainant's position that the space heater is the true reason as why the Complainant was moved. This is asserted wrong.**

- **The true reason and fact of record as related in the content which documents <u>sexual harassment</u> as my concern.** <u>Sexual harassment and the harassers pervasive unwelcome behavior including unprofessional conduct targeted at me was clearly unprofessional and no longer tolerated; There was no way I was going to give in to her demands and her beliefs that somehow I was going to be in a relationship with her or what she deemed as fitting.</u> **<u>As a result my seat request was granted and I was moved. Let this be noted.</u>**

- However the request to move me or the alleged harasser started much earlier through my initiated requests. <u>When addressing the matter with my supervisor, Mr. Leonard, he immediately dismissed this and absolutely rejected the idea.</u>

**As a consequence to the named Complainant. The investigator formulates and reverses the two items creating the unintended impression of error willful of investigatory misconduct, incomplete judgment and entirely omitting in draft summary crucial/undisputed facts including, among others, the omission of <u>documented harassment examples</u> asserted by the Complainant the true real reason in asking for the seat move to occur. <u>This itself is inexcusable and gross error on behalf of the investigator and author of the draft summary in consideration as to the facts stated on record.</u>**

In respect to testimony, I will clarify, the Complainant's initial affidavit, answer, the Complainant's rebuttal and documented evidence submitted to the Commission and the Respondent. Referencing these specific issue(s) of <u>sexual harassment example(s)</u> documented and made the Respondent aware of the issue in meeting on December 12, 2005. This issue should not be confused nor omitted as a fact of record where the investigator errors by not including reference to <u>sexual harassment examples</u> where the investigator instead wrongfully states the **"<u>space heater</u>"** as the ultimate reason for the move.

- **<u>In consequence, prejudicially and not withstanding the facts the Complainant's testimony and fact of record is being discredited and grossly misstated by the presiding investigator.</u>**

<u>Absolute investigator misconduct engaging in gross error and misstating the facts of the investigative file as where the Commission, the investigator, pursuant to law and applicable statutes is discriminating and not administrating equally as to the weight of evidence presented before us including enforcing the rules of professional conduct, pursuant to the case and charge of the facts entered in record undisputedly presented before us.</u>

17

I specifically state on record [see Exhibit 1] both written/ hard copy/ verbal, whereby, addressing immediate concern(s) as related to Ms. Bingham's uninvited behavior and grossly inappropriate comments/statements inferring harm. I directly turned over to the senior management team within the bank [Exhibit 1] after several attempts to resolve the matter initially - which include(s):

1. **direct intended threat on my life** communicated onto me in the presence of banking employee's
2. **direct threatening/hostile language**
3. **obscene/abusive language**
4. **sexual innuendos** directed specifically at me
5. **excessive disturbance explicit/obscene/vulgar language**
6. irresponsible use of **space heater**, affecting my responsibilities, productivity, space and personal well being as an associate of the bank

In respect to the Banks company procedure and policy concerning the above matter a feasible appropriate measure should have resulted in suspending the alleged harasser pending an investigation, either internal or by a neutral party.

- Banking representative Mr. Noble testified as his understanding and what management appeared to believe at the time that it was a "he said, she said" set of events. Incorrectly stated by Mr. Noble.

- The harasser, Ms. Bingham, language consisted of many offensives and directed at me comments such as; "I think it's about time Richard stuck his thing in my chocolate"…

- He's never been with a black girl before…

- I will hurt you if you touch my shit, I will drop you do you hear me cause I ain't play-in with you"…

**Most of this language was being said readily in and around Ms. Bingham's workstation. I found it hard to believe that Mr. Leonard approved of this unprofessional conduct and merely dismissed it as something not worth arguing over.**

- In fact Mr. Leonard dismissed claims when I said that her behavior is out line and she is not respecting both you and me. I frankly commented to Mr. Leonard that sitting next to Bianca is like sitting next to a big bad bear. Mr. Leonard responded back when I asked about a possible seat change; he responded - **that's not my problem and said; well looks like you'll be sitting next to the big bad bear.**

18

Frantically not following through on approved company protocol and code of behavior concerning the above matter. The Bank was ignorant by way of my manager and its management by way of procedures and policies as to statutes and laws enforced by the courts and company. Also the **contracting agency (Adecco Staffing)** in failure in its duties to act accordingly. <u>As Ms. Haynes stated in testimony there was no reason as to why the alleged harasser continued at her job with the Bank since she could have been terminated immediately.</u> A question worth asking is:

- When was the contracted vendor, **Adecco Staffing,** contacted as to the Complainant's initial Complainant [**Exhibit1**] dated **December 9, 2005** provided to the contracting agency, Adecco?

- Was Adecco notified as to this complaint filed by the Banks employee concerning the temporary employees unprofessional conduct, behavior and threats directed at the Complainant?

Page 3, in respect to the "reasonable cause standard" as within meaning of the Act. 46a-51, sub-parts (7) and (8), Conn. Gen. Stat.

1. Assigned investigator, Mr. Callahan is either knowingly or unknowingly misstating, not including relevant material which is provided and documented by the Complainant in his rebuttal and subsequent communication, <u>evidence of proof provided by the Complainant is misinterpreted and grossly in error, including investigator erred in the findings on record, grossly misinterpreting **[Exhibit 1]**, inappropriately drawing inferences as to the stated facts, when considering **Exhibit 1,** and the investigator is incoherently digesting evidence presented at the fact finding hearing.</u>

2. Noting for the Commission there was **no exchange or evidence provided either written, photocopy or hardcopy by the Respondent presented into evidence for the Commission and investigator to consider as to relevance or more probative fact** dismissing any disputed facts in record by the Respondent.

<u>The neutrality of the assigned investigator coming into question whereby the Complainant concludes the investigator not being thorough and complete, as the investigator concluded gross error in facts in the completed draft summary submitted by the investigator, Mr. Callahan.</u>

- Not questioning the credibility of the witness's for the Respondent, whereby, at the fact-finding hearing (August 2007) unfounded accusations, unsubstantiated and undocumented events are now introduced by the Respondent (Ms. Spicer and Mr. Leonard) verbally accusing the Complainant of

19

unprofessional misconduct whereby the Complainant *"lunged at a senior member of management, Ms. Donna Spicer"* on or about May 11, 2006, in the presence and witness of Team Leader Mark G. Leonard.

- The alleged allegation claimed by Ms. Spicer was not addressed directly to me nor was there an opportunity to rebut any or all actions/statements as alleged by Ms. Spicer and supported by Mr. Leonard in describing the alleged event in testimony for the first time on August 7, 2007 at the fact finding hearing. **Note: "lunging action" was not documented, nor referred to other responsible appropriate channels at the Bank by Ms. Spicer, up to and including the Banks "security officers" on duty. Let it be noted.**

The credibility of the witness statements and testimony is questionable and draws inaccurate inference or inferences for the investigator as to the Complainant's questionable behavior. As noted this new and undocumented *"lunging"* issue arose from the initial handling of the initial complaint filed by the Complainant to the said individuals. It is merely a pretext justifying the Respondent's legitimate reason for the adverse employment action. **As to their credible explanation it surely draws and infers bias, skeptic train of thought, and retaliatory impulse cumulating self interest and bias as deemed appropriate to the Respondent.**

| Page 4 |
| --- |
| Question 1 |

**WITH RESPECT TO RETALIATION,** the investigator **ERROR** its conclusion and reasoning that the Complainant did not specify specifics of examples of sexual harassment and that he failed to do so. The Complainant did in fact state specifics including when questioned by Unit Leader Ms. Beverley Haynes as to what exactly did I hear, Ms. Haynes along with Mr. Leonard and Ms. Spicer jotted down notes on yellow legal pads (12/12/2005) as to what I said about the issue. **"I said, Ms. Bianca Bingham, said it's about time Richard sticks his thing in my chocolate."** Ms. Bingham in addition discussed other closely related themes of sexual and inappropriate matter which I discussed earlier in similar situations such as:

- **have you ever been with a black female**
- **look at him he's blushing**
- **he knows he wants it.**

I commented to Ms. Haynes, Mr. Leonard and Ms. Spicer that these are things I would not say to my own sister. Not much conversation was initiated by either team member. Considering what was said, Ms. Haynes concluded the meeting and stated that I shall not discuss anything with anyone to what we discussed here today. She mentioned she will take my comments and what I said to the attorney here at

20