UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RICHARD CHYLINSKI, | : | CIVIL ACTION NO. |
| | : | 3:08-CV-00322 (JCH) |
| Plaintiff, | : | |
| VS. | : | |
| | : | |
| BANK OF AMERICA, N.A., et al. | : | |
| | : | |
| Defendants. | : | |
| | : | JANUARY 28, 2009 |

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
ADECCO USA, INC. AND MARIA BERNACKI'S
MOTION TO DISMISS COUNTS TWO AND THREE
OF PLAINTIFF'S AMENDED COMPLAINT

## I.   INTRODUCTION

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Adecco USA, Inc. ("Adecco") and Maria Bernacki ("Ms. Bernacki") (collectively, the "Adecco Defendants"), hereby submit their memorandum of law in support of their Motion to Dismiss Counts Two and Three of Plaintiff's Amended Complaint. As set forth herein, Plaintiff has not set forth sufficient allegations to support his negligent employment claim against Adecco in Count Two of the Amended Complaint, nor sufficient allegations to support his negligent hiring and retention claim against Ms. Bernacki in Count Three. Accordingly, Counts Two and Three of the Amended Complaint should be dismissed. In addition, the allegations in Counts Two and Three of the Complaint also should be dismissed for failure to satisfy the notice pleading requirement of Federal Rule of Civil Procedure 8(a) (2).

71484702.1 100460-000050

## II.   PROCEDURAL BACKGROUND

Plaintiff initiated this action by filing a Complaint against Bank of America, N.A. (the "Bank") and several of the Bank employees collectively, (the "Bank Defendants"). In his initial complaint, Plaintiff alleged that the Bank Defendants terminated his employment, and discriminated and retaliated against him in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000, et. seq. after he complained to the Bank that he was sexually harassed by an employee of the Bank, Bianca Bingham. The Bank Defendants moved to dismiss the complaint in its entirety for failing to satisfy the notice pleading requirements of Fed. R. Civ. P. 8(a) (2) and additional grounds with respect to the individual defendants. The Court granted the Bank's motion to dismiss the complaint, but granted Plaintiff leave to file an Amended Complaint.

Plaintiff filed an Amended Complaint on December 5, 2008. In addition to asserting Title VII sex and national origin discrimination claims against the Bank Defendants, Plaintiff alleges in his Amended Complaint that Adecco negligently employed Ms. Bingham, and added Ms. Bernacki, an Adecco employee, as an individual defendant. (Amended Complaint ¶¶ 8-9.) Plaintiff alleges that Ms. Bernacki negligently hired and retained Ms. Bingham. (Amended Complaint ¶ 9.)

## III.   ARGUMENT

### A.   Standard For Dismissal Under Rule 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), a court is required to dismiss a claim if the Plaintiff has failed to allege sufficient facts which, if proven, would support the claim. Neitzke v. Williams, 490 U.S. 319, 326 (1989); Honeck v. Civil Nicolock Paving Stones of New England, 2005 U.S. Dist. LEXIS 11291, *2 (D. Conn. June 10, 2005). In analyzing a motion to dismiss, a court must

accept all allegations set forth in the complaint as true and must assess the sufficiency of the complaint based on those allegations. See Neitzke, 490 U.S. at 326-27; Javier v. Beiersdorf, 2002 U.S. Dist. LEXIS 8731, *8 (D.Conn. April 11, 2002). However, a court should not credit bald assertions or legal conclusions. Kern v. City of Rochester, 93 F.3d 38, 44 (2nd Cir. 1996); Emmelmann v. American Foreign Ins. Co., 2006 U.S. Dist. LEXIS 16286, * 3-4 (D.Conn. Mar. 30, 2006).

Here, the facts as alleged in Counts Two and Three Amended Complaint, fail to state a claim upon which relief may be granted. As set forth more fully below, Plaintiff has set forth no allegations showing that Adecco caused damages to him through its alleged employment of Ms. Bingham, and his negligent employment claim therefore must be dismissed. Similarly, Plaintiff has set forth no allegations in Count Three of the Amended Complaint showing that Ms. Bernacki caused damages to him through her alleged hiring and retention of Ms. Bingham. Furthermore, Count Three also must be dismissed as a matter of law because employers, rather than individuals may be held liable for negligent hiring and retention.

**B.      Plaintiff's Negligent Employment Claim Against Adecco Must Be Dismissed For Failure to State a Claim.**

Plaintiff alleges in Count Two of the Amended Complaint that: "Adecco USA is the leading global provider of job opportunities, career advice and expert recruiting solutions. Adecco USA maintains a branch office based in Hartford, CT. Adecco USA headquarters is located in Long Island, NY. . . . Adecco negligently employed the alleged harasser Ms. Bingham". (Amended Complaint ¶ 8.)[1] As alleged, these facts do not state a claim for negligent employment.

---

[1] The Adecco Defendants dispute several of the erroneous allegations against them in the Amended Complaint and reserve the right to contest these allegations in the event of any further proceedings in this matter.

In order to state a claim for negligent employment, a plaintiff must plead that the employer owed a duty to the plaintiff, breached that duty, and that the employer's breach caused damages to the plaintiff.  See Radesky v. First American Title Insurance Co., 2003 U.S. Dist. LEXIS 15969 *15-16 (D. Conn. Aug. 29, 2003) (citing Catz v. Rubenstein, 201 Conn. 39 (1986).)[2]  Here, Plaintiff's Amended Complaint is devoid of any allegation that Adecco owed a duty to him, let alone that Adecco breached such duty, or thereby caused injury to him.

First of all, Plaintiff has failed to allege that Adecco owed any legal duty to him. According to the allegations in his Amended Complaint, Plaintiff was an employee of the Bank at the time that he allegedly was sexually harassed by Ms. Bingham.  (See Amended Complaint at ¶6.)   Plaintiff also alleges that he was an employee of the Bank at the time that his employment was terminated (Id.)  He further alleges that it was the Bank, and not Adecco, that terminated his employment. (Id.)   Based on such allegations, Plaintiff may have alleged a sufficient basis to assert that the Bank owed him certain legal duties with respect to his employment there.  He has failed to allege any factual basis, however, for Adecco owing him any legal duty with respect to his employment at the Bank.[3]

Secondly, Plaintiff alleges in the Amended Complaint that his damages were caused by the Bank's termination of his employment.   (Amended Complaint ¶ 3).   While Plaintiff summarily alleges that Adecco "negligently" employed Ms. Bingham, he has failed to allege how Adecco's employment of Ms. Bingham caused the termination of his employment or caused

---

Nevertheless, for the purposes of this motion, the Adecco Defendants recognize that this Court must accept the allegations as pled in the Amended Complaint.

[2] Copies of all unreported cases cited herein are attached hereto as Appendix A.

[3] Plaintiff alleges that his purported harasser, Ms. Bingham, was "a contracted employee of Adecco USA." Amend Complaint ¶ 6.  Even if such an allegation were true, it simply would establish that Adecco owed certain legal duties to Ms. Bingham, not to Plaintiff and every other employee of the Bank.

him any other type of injury.  "A breach of duty by the defendant and a causal connection between the defendant's breach of duty and the resulting harm to the plaintiff are essential elements of a cause of action in negligence." <u>Radesky</u>, 2003 U.S. Dist. LEXIS 15969 at *15-16. In Plaintiff's Amended Complaint, there is no allegation of any causal connection between Adecco's alleged negligent employment of Ms. Bingham and the termination of his employment. Plaintiff merely alleges that he was sexually harassed by Ms. Bingham, that he complained about such harassment to the Bank (not to Adecco), that Ms. Bingham ceased working at the same location as him, and that the Bank (not Adecco) subsequently terminated his employment. (Amended Complaint at ¶ 6.)  There is no causal connection between Adecco's alleged negligent employment of Ms. Bingham and the Bank's alleged wrongful termination of Plaintiff's employment.  The Bank's alleged wrongful termination of Plaintiff's employment is a separate and independent act from Ms. Bingham's alleged sexual harassment of Plaintiff.  Accordingly, Count Two of Plaintiff's Amended Complaint must be dismissed for failure to state a claim.

**C.     Plaintiff's Negligent Hiring and Retention Claim against Ms. Bernacki Must Be Dismissed Because Plaintiff Has Not Alleged that Ms. Bernacki Caused the Termination of His Employment and Individuals Cannot Be Held Liable For Negligent Hiring and Retention Claims.**

Plaintiff alleges in Count Three of the Amended Complaint that: "Maria Bernacki is a branch manager at the Hartford branch of Adecco USA located in Hartford, CT.  Mrs. Bernacki is charged with . . . negligence in hiring and retaining an employee (Ms. Bingham) after the plaintiff alerted Bank management alleging sexual harassment."  (Amended Complaint ¶ 9.) First, Count Three should be dismissed because Plaintiff has not alleged that Ms. Bernacki caused the termination of his employment, or any other injury, through her supposed hiring and retention of Ms. Bingham.  Secondly, Count Three should be dismissed for the reason that only employers – not individuals – may be held liable for negligent hiring and retention.

71484702.1 100460-000050                                         -5-

**1.    Plaintiff Fails to Allege Facts to Support a Causal Connection Between His Termination and Ms. Bernacki's Hiring and Retention of Ms. Bingham.**

"Under Connecticut law, a negligent hiring claim requires a plaintiff to plead and prove that he was injured by defendant's own negligence in failing to select as its employee a person who was fit and competent to perform the job in question and that his injuries resulted from employee's unfit or incompetent performance of his work." Abate v. Circuit-Wise, Inc., 130 F.Supp.2d 341, 344 (D. Conn. 2001), (citing Shanks v. Walker, 116, F.Supp.2d 311, 314 (D. Conn. 2000)).   "Negligent retention occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicate his unfitness and the employer fails to take further action." Doe v. Abrahante, 1998 Conn. Super. LEXIS 1177 *3-4 (Conn. Super. Ct. 1998) (internal citation omitted.) Furthermore, as with a negligent employment claim, a negligent retention claim requires a plaintiff to allege that an employer owed a duty to the plaintiff, breached that duty, and that the employer's breach caused damages to the plaintiff.  See Radesky 2003 U.S. Dist. LEXIS 15969 at *15-16.

Count Three of Plaintiff's Amended Complaint should be dismissed for the same reasons as Count Two.  One again, Plaintiff has failed to allege that Ms. Bernacki owed any legal duty to him or that her breach of any legal duty caused damages to him.  Ms. Bernacki was an employee of Adecco, not of the Bank.  Hence, Ms. Bernacki did not owe any legal duties regarding hiring and retention to Plaintiff, or to other employees of the Bank.

In addition, any alleged breach of duty by Ms. Bernacki does not have a casual connection to Plaintiff's alleged injuries.  As set forth above in Section III (B), Plaintiff asserts that his injuries were caused by the Bank's alleged wrongful termination of his employment.

(Amended Complaint at ¶¶ 1, 3 and 13.)  Ms. Bernacki had no role or involvement in the Bank's decision to terminate Plaintiff's employment.  Ms. Bingham, Plaintiff's alleged harasser, also had no role or involvement in the Bank's decision to terminate Plaintiff's employment.  In the absence of any such casual connection, Count Three of Plaintiff's Amended Complaint must be dismissed.

**2.     Count Two Should Be Dismissed Because Ms. Bernacki, as an Individual Cannot Be Held  Liable  For Negligent Hiring and Retention.**

Plaintiff's allegation in Count Three of the Amended Complaint that "Mrs. Bernacki is charged with . . . negligence in hiring and retaining an employee (Ms. Bingham)" fails to state a cause of action.  (Amended Complaint ¶ 9).  Ms. Bernacki cannot be held liable for negligent hiring and retention as an individual separate from her employer, Adecco.  Individually-named defendants, who are not themselves employers, are not liable for negligent hiring claims.  (See Fonge v. United Insurance Co., 1998 Tex. App. LEXIS 6421 *3 (Texas App. 1998).  Furthermore, Connecticut courts only have recognized the tort of negligent hiring and retention with respect to employers, and not against individual employees. (See Abate 130 F.Supp.2d at 344 (dismissing plaintiff's negligent hiring claim because he failed to allege injury caused by defendant employer's negligence); Radesky, 2003 U.S. Dist. LEXIS 15969 at *15-16 (explaining that an *employer* may be liable for the tort of negligent retention and supervision) (emphasis added); Abrahante, 1998 Conn. Super. LEXIS 1177 at*3-4 (noting that negligent retention occurs when an *employer* becomes aware of unfitness of a particular employee and fails to take action) (emphasis added).

In the case at bar, Plaintiff has not and cannot credibly allege that Ms. Bernacki was the employer of Ms. Bingham.  To the contrary, Plaintiff merely alleges that "Maria Bernacki is a

branch manager at Hartford branch of Adecco USA located in Hartford, CT." (Amended Complaint at ¶ 9.) Plaintiff also alleges that Ms. Bingham was "a contracted employee of Adecco USA." (Amended Complaint at ¶ 6.) Because Plaintiff has not and cannot allege that Ms. Bernacki was the employer of Ms. Bingham, this Court must dismiss the claims of negligent hiring and negligent retention that Plaintiff has filed against Ms. Bernacki.

**D.     The Factual Assertions in Counts Two and Three of the Amended Complaint Do Not Satisfy the Notice Pleading Requirements of Fed. R. Civ. P. 8.**

The factual assertions contained in Plaintiff's Amended Complaint baldly assert negligent employment, hiring and retention claims, and fail to allege any specific facts to support these claims. Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this rule is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." See Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007), quoting Conley v. Gibson, 355 U.S. 41, 47 (1957). In order to overcome a Rule 12(b)(6) motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp, 127 S.Ct. at 1964-65, citing Papasan v. Allain, 478 U.S. 265, 286 (1986) (in a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). As the United States Supreme Court stated, "Rule 8(a) contemplates the statement of circumstances, occurrences, and events in support of the claim presented and does not authorize a pleader's bare averment that he wants relief and is entitled to it." Bell Atlantic Corp., 127 S. Ct. at 1965 n. 9, quoting 5 C. Wright & A. Miller, Federal Practice and Procedure, § 1202 at 94-95 (3rd Ed. 2004).

Regarding negligent employment, the Amended Complaint merely states: "Adecco negligently employed the alleged harasser Ms. Bingham." (Amended Complaint ¶ 8.) Similarly, regarding Plaintiff's negligent hiring and retention claim, the Amended Complaint simply states "Mrs. Bernacki is charged with . . . negligence in hiring and retaining an employee (Ms. Bingham) after the plaintiff alerted Bank management alleging sexual harassment." (Amended Complaint ¶ 9) These bald assertions, without any facts alleging the required "statement of circumstances, occurrences and events in support of the claim presented" as required by the Supreme Court in <u>Bell Atlantic</u>, fail to provide the Adecco Defendants with adequate notice of the factual basis for Plaintiff's claims. Accordingly, Counts Two and Three of the Amended Complaint should be dismissed for insufficient pleading.

IV.   **CONCLUSION**

For each of the foregoing reasons, the Court should grant Defendants Adecco and Ms. Bernacki's motion to dismiss Counts Two and Three of Plaintiff's Amended Complaint.


Respectfully submitted,

**DEFENDANTS ADECCO USA, INC. AND MARIA BERNACKI**


By    /s/  Daniel L. Schwartz_____
      Daniel L. Schwartz (ct 09862)
      Sarah F. DePanifilis (ct 26954)
      Day Pitney LLP
      One Canterbury Green
      Stamford, Connecticut 06901-2047
      Tel. (203) 977-7300
      Fax (203) 977-7301
      Email: dlschwartz@daypitney.com
            sdepanfilis@daypitney.com

Dated: January 28, 2009

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that a copy of the foregoing was served this 28th day of January, 2009, via first-class mail, postage prepaid, to:

Richard A. Chylinski
35 Santo Court
New Britain, Connecticut 06053

John G. Stretton
Edwards Angell Palmer & Dodge LLP
301 Tresser Boulevard
Stamford, CT  06901

Alice A. Kokodis
Edwards Angell Palmer & Dodge LLP
301 Tresser Boulevard
Stamford, CT  06901


/s/  Daniel L. Schwartz
Daniel L. Schwartz

## CERTIFICATION OF SERVICE

I hereby certify that on this date a copy of the foregoing Memorandum of Law in Support of Defendants Adecco USA, Inc. and Maria Bernacki's Motion to Dismiss Counts Two and Three of Plaintiff's Amended Complaint was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

_____ /s/ Daniel L. Schwartz
Daniel L. Schwartz

# EXHIBIT A



LEXSEE 2005 U.S. DIST. LEXIS 11291



Positive
As of: Jan 28, 2009

**ROBERT HONECK, Plaintiff, v. Civil NICOLOCK PAVING STONES OF NEW ENGLAND, LLC, Defendant**

**No. 3:04cv1577 (JBA)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT**

*2005 U.S. Dist. LEXIS 11291*

**June 10, 2005, Decided**

**SUBSEQUENT HISTORY:** Summary judgment granted by *Honeck v. Nicolock Paving Stones of New Eng., LLC, 2006 U.S. Dist. LEXIS 60379 (D. Conn., Aug. 25, 2006)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff former employee filed suit against defendant former employer alleging violations of the Age Discrimination in Employment Act (ADEA), *29 U.S.C.S. § 621 et seq.*, and the Americans with Disabilities Act (ADA), *42 U.S.C.S. § 12101 et seq.* The employee also asserted common-law claims for wrongful discharge and intentional infliction of emotional distress (IIED). The employer moved to dismiss the two common-law claims.

**OVERVIEW:** The employee alleged that the employer wrongfully discharged him in contravention of the public policy against discrimination. The employer asserted that this claim was barred by the existence of statutory remedies for the employee under the ADEA and ADA. The court found that because the ADEA and ADA provided the employee with private enforcement procedures through which he may seek compensatory damages and equitable relief, he failed to state a cognizable common-law wrongful discharge claim. Next, the employee alleged that the employer intentionally inflicted emotional distress upon him through its employees' discriminatory misconduct in the workplace. According to the amended complaint, the employee was "humiliatingly" asked to train his replacement, "demeaningly" subjected to the moving of his files, treated in a discriminatory manner, and harassed due to his depression, stress, and age. The court found that the employee failed to describe any behavior directed to either his age or depressive condition which went beyond insults or indignities.

**OUTCOME:** The motion was granted. The employee's wrongful discharge and IIED claims were dismissed.

**CORE TERMS:** wrongful discharge, common-law, public policy, good faith, statutory remedies, misconduct, outrageous, emotional distress, cause of action, private enforcement, wrongfully, discharged, workplace, harassed, IIED Mem of Law, federal law, employment discrimination, wrongful discharge, emotional harm, remedy available, implied covenant, fair dealing, disability-based, replacement, retaliation, humiliating, disability, infliction, depression, medication

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
[HN1] To survive a motion to dismiss under *Fed. R. Civ. P. 12(b)(6)*, a complaint must include only a short and

Case 3:08-cv-00322-JCH   Document 68   Filed 01/28/09   Page 15 of 38

Page 2
2005 U.S. Dist. LEXIS 11291, *

plain statement of the claim showing that the pleader is entitled to relief. A claim should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

***Labor & Employment Law > Employment Relationships > At-Will Employment > Duration of Employment***
***Labor & Employment Law > Employment Relationships > At-Will Employment > Exceptions > Public Policy***
***Labor & Employment Law > Wrongful Termination > Public Policy***
[HN2] Under Connecticut common law, the general rule is that contracts of permanent employment, or for an indefinite term, are terminable at will. However, the Connecticut Supreme Court adopted an exception to the at-will employment rule which imposes some limits on the employer's otherwise unbridled discretion to terminate an employee. Nevertheless, this exception is quite narrow. So long as the plaintiff has a remedy available under either state or federal law which serves to protect the public policy alleged to have been violated, the common-law cause of action for wrongful discharge is precluded.

***Labor & Employment Law > Wrongful Termination > Public Policy***
[HN3] If a relevant state or federal law contains a private right of action, a wrongful discharge claim will fail.

***Healthcare Law > Business Administration & Organization > Wrongful Termination > General Overview***
***Labor & Employment Law > Discrimination > Age Discrimination > Remedies > General Overview***
***Labor & Employment Law > Wrongful Termination > Remedies > General Overview***
[HN4] Courts in Connecticut have concluded that the Age Discrimination in Employment Act, *29 U.S.C.S. § 621 et seq.*, and the Americans with Disabilities Act, *42 U.S.C.S. § 12101 et seq.*, contain private remedies sufficient to preclude wrongful discharge claims.

***Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements***
***Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation***
[HN5] Pursuant to *Fed. R. Civ. P. 8(e)(2)*, a plaintiff may plead two or more statements of a claim, even within the same count, regardless of consistency.

***Civil Procedure > Trials > Jury Trials > Province of Court & Jury***
***Torts > Intentional Torts > Intentional Infliction of Emotional Distress > Elements***
[HN6] To support an intentional infliction of emotional distress claim under Connecticut law, a plaintiff must show that (1) the defendant intended to cause emotional harm, or knew or should have known that such harm was likely to result; (2) the defendant's misconduct was "extreme and outrageous"; (3) such conduct caused the plaintiff's harm; and (4) the plaintiff sustained "severe" emotional harm. Initially, whether the defendant's conduct is sufficiently extreme and outrageous is an issue for the court to decide. Only where reasonable minds disagree does it become an issue for the jury.

***Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims***
***Torts > Intentional Torts > Intentional Infliction of Emotional Distress > Elements***
[HN7] To defend a motion to dismiss on an intentional infliction of emotional distress claim under Connecticut law, a plaintiff must show that he will be able to establish conduct which exceeded all bounds usually tolerated by decent society. Conduct is sufficiently objectionable when a recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" Mere insults, indignities, or annoyances that are not extreme or outrageous will not suffice.

***Torts > Intentional Torts > Intentional Infliction of Emotional Distress > General Overview***
[HN8] Connecticut courts have repeatedly held that even insulting, hurtful, and socially undesirable conduct, without more, is not enough to support a claim of intentional infliction of emotional distress. In some cases, allegations that the defendant knowingly exploited a particular susceptibility of the plaintiff have survived dismissal.

***Torts > Intentional Torts > Intentional Infliction of Emotional Distress > Elements***
[HN9] The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially intolerable behavior and therefore is insufficient to state a claim for intentional infliction of emotional distress.

**COUNSEL:** [*1] For Robert Honeck, Plaintiff: Marc L. Glenn, W. Martyn Philpot, Jr., Law Offices of W. Martyn Philpot, Jr., LLC, New Haven, CT.

For Nicolock Paving Stones of New England, Defendant: Andrew A. Cohen, Letizia, Ambrose & Cohen, New Haven, CT.

**JUDGES:** JANET BOND ARTERTON, U.S.D.J.

**OPINION BY:** JANET BOND ARTERTON

**OPINION**

*RULING ON DEFENDANT'S MOTION TO DISMISS [DOC. # 13]*

Plaintiff Robert Honeck ("Honeck") filed this employment discrimination action against Nicolock Paving Stones of New England ("Nicolock"). *See* Am. Compl. [Doc. # 12] at P1. The amended complaint alleges violations of the Age Discrimination in Employment Act ("ADEA"), *29 U.S.C. § 621 et seq.*, and the Americans with Disabilities Act ("ADA"), *42 U.S.C. § 12101 et seq.* Plaintiff also asserts common-law claims for wrongful discharge and intentional infliction of emotional distress ("IIED"). The defendant now moves to dismiss [Doc. # 13] the two common-law claims. For the reasons that follow, the defendant's motion will be granted.

**I. FACTUAL BACKGROUND**

The amended complaint alleges the following facts, which must be presumed to be true for the purposes [*2] of this motion. *See Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984); Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994).* Honeck, a sixty-year old male, started working for Nicolock on March 3, 1997, as a salesman. Am. Compl. at P5. In 2000, he began experiencing chest pains, which his doctors attributed to work-related stress. *Id.* at PP6-7. Honeck was promoted to General Manager the following March, but was soon demoted and asked by Nicolock to train his younger successor. *Id.* at PP5, 8. During this time, he was also treated for depression. *Id.* at P9. Plaintiff further alleges that defendant's employees harassed him because of his health problems, specifically by "subjecting him to condescending and harassive [sic] remarks regarding his work performance and ongoing health issues including referring to his medication as 'happy pills'." *Id.* In January 2003, Honeck resigned at the defendant's request, after which the defendant hired a younger replacement. *Id.* at P10.

**II. STANDARD**

The defendant moves pursuant to *Fed. R. Civ. P. 12(b)(6)* to dismiss Counts Two [*3] and Four for failure to state a claim upon which relief may be granted. [HN1] To survive a motion to dismiss, "a complaint must include only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512, 152 L. Ed. 2d 1, 122 S. Ct. 992 (2002)* (quoting *Fed. R. Civ. P. 8(a)(2)*). A claim should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957).*

**III. DISCUSSION**

**A. *Wrongful Discharge***

Count Two alleges that the defendant wrongfully discharged the plaintiff in contravention of the public policy against discrimination. The defendant asserts that this claim is barred by the existence of statutory remedies for the plaintiff under the ADEA and ADA. Mem. of Law in Support of Mot. to Dismiss [Doc. # 14] at 1. Nicolock argues that, because the ADEA and ADA promote the same public policies as those alleged to have been violated in the wrongful discharge common-law claim, the latter [*4] is precluded. *Id.* at 3. In his Opposition, Honeck responds that, notwithstanding the existence of his federal claims, his claim of wrongful discharge should be allowed to proceed in order to effectuate the public policy against workplace discrimination. Opp'n. Br. [Doc. # 16] at 4. The plaintiff further argues that under *Fed. R. Civ. P. 8(e)(2)*, he should be allowed to alternatively plead both his statutory and common-law claims. *Id.*

[HN2] Under Connecticut common law, the general rule is that "contracts of permanent employment, or for an indefinite term, are terminable at will." *Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 474, 427 A.2d 385, 386 (1980).* However, the Connecticut Supreme Court in *Sheets* adopted an exception to the at-will employment rule which "imposes some limits" on the employer's otherwise "unbridled discretion to terminate" an employee. *Id. at 476, 427 A.2d at 387.* Nevertheless, this exception is quite narrow. *Parsons v. United Technologies Corp., 243 Conn. 66, 79, 700 A.2d 655, 662 (1997).* So long as the plaintiff has a remedy available under either state [*5] or federal law which serves to protect the public policy alleged to have been violated, the common-law cause of action for wrongful discharge is precluded. *Burnham v. Karl & Gelb, P.C., 252 Conn. 153, 159-60, 745 A.2d 178, 182 (2000).*

In *Sheets*, the plaintiff, who was employed by the defendant as a quality control manager, alleged that he

was discharged in retaliation for attempting to comply with state food labeling requirements. *179 Conn. at 478, 427 A.2d at 388.* Recognizing that such conduct is contrary to the policies embodied in the state food safety law, and that the law contained no provisions for private enforcement, the court concluded that the plaintiff had properly stated a claim for wrongful discharge. *Id. at 480, 427 A.2d at 389; see also Parsons, 243 Conn. at 79-80, 700 A.2d at 663* (plaintiff relied on state laws requiring employers to maintain a reasonably safe workplace); *Faulkner v. United Technologies Corp, 240 Conn. 576, 584-86, 693 A.2d 293, 297 (1997)* (employee could maintain claim of wrongful discharge contrary to policy expressed in *Major Frauds Act*).

However, [HN3] if a relevant [*6] state or federal law contains a private right of action, a wrongful discharge claim will fail. In *Burnham*, for example, the plaintiff alleged that she was wrongfully discharged in retaliation for reporting unsanitary working conditions to the state dental association. *252 Conn. at 155, 745 A.2d at 179.* The Connecticut Supreme Court concluded that her common-law claim was precluded by the private enforcement procedures in both OSHA and its state-law counterpart. *Id. at 158-164, 745 A.2d at 181-84.* In a race discrimination case, the court in *Napoleon v. Xerox Corp., 656 F. Supp. 1120, 1125 (D. Conn. 1987)*, concluded that the plaintiff's wrongful discharge claim was barred because he had an "explicit state statutory remedy for the defendant's alleged misconduct under the comprehensive procedural provisions of the *Connecticut Fair Employment Practices Act*." Similarly, [HN4] courts in Connecticut have also concluded that the ADEA and ADA contain private remedies sufficient to preclude wrongful discharge claims. For instance, in *Friel v. St. Francis Hospital, 1997 U.S. Dist. LEXIS 17430, No. 3:97cv803 (DJS), 1997 WL 694729, at *3 (D. Conn. Oct. 31, 1997)*, [*7] the plaintiff's gender- and disability-based discharge claims were dismissed due to her available remedies under the ADA, Title VII, and CFEPA. The same result was reached in *Exdaile v. Hill Health Corp., 2001 Conn. Super. LEXIS 3213, No. CV-98-0262401-S, 2001 WL 1479115, at *2 (Conn. Super. Nov. 9, 2001)*, where the plaintiff's common-law age and disability discrimination claims were barred by the existence of enforcement provisions in the ADEA and ADA. The court reasoned that "allegations of employment discrimination are 'adequately enforceable through statutory remedies and [do] not warrant judicial recognition of an independent cause of action.'" *Id.* (quoting *Atkins v. Bridgeport Hydraulic Co., 5 Conn. App. 643, 648, 501 A.2d 1223, 1226 (1985))*. Accordingly, because the ADEA and ADA provide Honeck with private enforcement procedures through which he may seek compensatory damages and equitable relief, he fails to state a cognizable common-law wrongful discharge claim. [1]

1  The plaintiff takes a slightly different position in his Opposition Memorandum, arguing for the first time that his discharge also violated the implied covenant of good faith and fair dealing. Opp'n. Br. at 5-6. There are two problems with this position. First, there was no contract on which to base a tort action for breach of good faith since the plaintiff was an at-will employee. *See Magnan v. Anaconda Indus., Inc., 193 Conn. 558, 572, 479 A.2d 781, 789 (1984)* ("where employment is clearly terminable at will, a party cannot ordinarily be deemed to lack good faith in exercising this contractual right").

Second, even if there were an employment contract, under Connecticut law there still must be some public policy which would otherwise be unredressed if the plaintiff could not maintain a wrongful dismissal claim. *Carbone v. Atl. Richfield Co., 204 Conn. 460, 470, 528 A.2d 1137, 1142 (1987)*. The plaintiff has not asserted any such policy; instead, he argues that good faith alone suffices as a policy. Opp'n. Br. at 5-6. According to *Carbone*, "absent a showing that the discharge involves an impropriety which contravenes some important public policy, an employee may not challenge a dismissal based upon an implied covenant of good faith and fair dealing." *204 Conn. at 470-71, 528 A.2d at 1142.*

[*8]  Plaintiff also cites [HN5] *Rule 8(e)(2)*, under which "a plaintiff may plead two or more statements of a claim, even within the same count, regardless of consistency." *Henry v. Daytop Village, Inc., 42 F.3d 89, 94 (2d Cir. 1994)*. However, in this case, the common-law discharge claim is not a valid theory of recovery that the plaintiff could "fall back" on should his ADEA and ADA claims fail: "the wrongful discharge cause of action is not intended to be a catch-all for those who either procedurally or on the merits fail to establish a claim under existing discrimination statutes." *Kilduff v. Cosential, Inc., 289 F. Supp. 2d 12, 18 (D. Conn. 2005)*. Rather, "the plaintiff's claim is precluded by virtue of the *existence* of a statutory remedy under" the ADEA and ADA. *Burnham, 252 Conn. at 161-62, 745 A.2d at 183* (emphasis added).

As a result, Honeck's common-law wrongful discharge claim is barred by the remedies available under the ADEA and ADA, and accordingly it will be dismissed.

**B. *Intentional Infliction of Emotional Distress (IIED)***

Count Four alleges that the defendant intentionally inflicted emotional distress upon [*9] the plaintiff

through its employees' discriminatory misconduct in the workplace. According to the amended complaint, Honeck was "humiliatingly" asked to train his replacement, "demeaningly" subjected to the moving of his files, treated in a discriminatory manner, and harassed due to his depression, stress, and age. Am. Compl. PP8-11. In its motion, Nicolock asserts that, even if the plaintiff's allegations of age- and disability-based misconduct are true, they do not rise to the level necessary to support a claim of IIED. Mem. of Law in Support of Mot. to Dismiss at 4.

[HN6] To support an IIED claim under Connecticut law, a plaintiff must show that (1) the defendant intended to cause emotional harm, or knew or should have known that such harm was likely to result; (2) the defendant's misconduct was "extreme and outrageous"; (3) such conduct caused the plaintiff's harm; and (4) the plaintiff sustained "severe" emotional harm. *Petyan v. Ellis, 200 Conn. 243, 253, 510 A.2d 1337, 1342 (1986).* Initially, whether the defendant's conduct is sufficiently extreme and outrageous is an issue for the court to decide. *Appleton v. Bd. of Educ., 254 Conn. 205, 210, 757 A.2d 1059, 1062 (2000).* [*10] "Only where reasonable minds disagree does it become an issue for the jury." *Id.*

[HN7] To defend a motion to dismiss, a plaintiff must show that he will be able to establish conduct which "exceeded all bounds usually tolerated by decent society." *Petyan, 200 Conn. at 254, 510 A.2d at 1342, n. 5* (quoting W. Prosser & W. Keeton, *Torts* § 12, at 60 (5th ed. 1984)). According to *Appleton*, conduct is sufficiently objectionable when a "recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *254 Conn. at 211, 757 A.2d at 1062* (quoting *Restatement (Second) Torts § 46, cmt. d* (1965)). "Mere insults, indignities, or annoyances that are not extreme or outrageous will not suffice." *Brown v. Ellis, 40 Conn. Supp. 165, 167, 484 A.2d 944, 946 (Sup. Ct. 1984).*

[HN8] Connecticut courts have repeatedly held that even insulting, hurtful, and socially undesirable conduct, without more, is not enough to support a claim of IIED. *See e.g. Miner v. Town of Cheshire, 126 F. Supp. 2d 184, 195 (D. Conn. 2000); Newtown v. Shell Oil Co, 52 F. Supp. 2d 366, 375 (D. Conn. 1999);* [*11] *Appleton, 254 Conn. at 211, 757 A.2d at 1063.* In some cases, allega-

tions that the defendant knowingly exploited a particular susceptibility of the plaintiff have survived dismissal. *See Mellaly v. Eastman Kodak Co. 42 Conn. Supp. 17, 21, 597 A.2d 846, 848 (Super. Ct. 1991); Brown v. Ellis, 40 Conn. Supp. 165, 166, 484 A.2d 944, 945 (Super. Ct. 1984).* In *Mellaly*, for example, the defendant's motion to strike was denied based on allegations that he egregiously exploited the plaintiff's condition as a recovering alcoholic. *42 Conn. Supp. at 21, 597 A.2d at 848.* In his complaint the plaintiff alleged that his supervisor "taunted and harassed" him for years, "yelled and screamed" at him both during work and at home, "frequently threatened" to fire him, and repeatedly attacked his need for medical treatment. *Id.* (internal quotations omitted).

The specific conduct here is not alleged to be nearly as severe. The only harassment alleged is a reference by a coworker to the plaintiff's medication as "happy pills." Am. Compl. P9. Honeck characterizes his co-workers' conduct as humiliating and demeaning, but fails to describe [*12] any behavior directed to either his age or depressive condition which goes beyond insults or indignities. Thus, no conduct is alleged which rises to the level required under *Petyan*. Furthermore, even if the plaintiff proved his discharge was due to age- or disability related discrimination, [HN9] "the mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially intolerable behavior" and therefore is insufficient to state a claim for IIED. *Parsons, 243 Conn. at 89, 700 A.2d at 667.* Even construing the plaintiff's complaint in the light most favorable to him, proof of allegations of demeaning, humiliating, or harassing conduct alone will not entitle him to relief.

## IV. CONCLUSION

Accordingly, defendant's motion is GRANTED. Plaintiff's claims based on wrongful discharge (Count Two) and IIED (Count Four) are dismissed.

IT IS SO ORDERED.

/S/

JANET BOND ARTERTON, U.S.D.J.

**Dated at New Haven, Connecticut, this 10th day of June, 2005.**



LEXSEE 2006 U.S. DIST. LEXIS 16286



Cited
As of: Jan 28, 2009

**DONNA EMMELMANN and MICHAEL EMMELMANN, Plaintiffs, v.
AMERICAN & FOREIGN INSURANCE COMPANY, Defendant.**

**Civil Action No. 3:03CV02144 (AWT)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT**

*2006 U.S. Dist. LEXIS 16286*

**March 30, 2006, Decided**

**CORE TERMS:** emotional distress, linoleum, repair, floor, recklessness, reckless, asbestos, factual allegations, infliction, definite, bad faith, cause of action, removal, knowledgeable, skilled, implied covenant, good faith, fair dealing, misconduct, outrageous, insurer, unsafe, unfair, abate, kitchen floor, powder, business practice, quotation marks, reasonable inferences, fail to state

**COUNSEL:** [*1] For Donna Emmelmann, Michael Emmelmann, Plaintiffs: Jonathan A. Kocienda, Stanger & Arnold, LLP, West Hartford, CT.

For American & Foreign Ins Co, Defendant: John W. Lemega, Halloran & Sage, Hartford, CT; Kathleen Anne St. Onge, Halloran & Sage, Hartford, CT.

**JUDGES:** Alvin W. Thompson, United States District Judge.

**OPINION BY:** Alvin W. Thompson

**OPINION**

**RULING ON MOTION TO DISMISS OR, IN THE ALTERNATIVE, *MOTION FOR MORE DEFINITE STATEMENT***

The defendant has moved to dismiss Counts Three, Four, Six, Seven, Eight, Twelve, Thirteen, Fourteen, Fifteen, Sixteen and Eighteen pursuant to *Fed. R. Civ. P. 12(b)(6)*. With respect to Counts Three, Seven, Thirteen, Fourteen and Eighteen, the defendant moves in the alter-

native for a more definite statement pursuant to *Fed. R. Civ. P. 12(e)*. The motion to dismiss is being granted with respect to each of the above-referenced counts, thereby rendering moot the motion for a more definite statement.

**I. FACTUAL BACKGROUND**

For purposes of this motion, the court accepts as true the plaintiffs' factual allegations as set forth in the Complaint. The plaintiffs [*2] are Donna Emmelmann and her son Michael Emmelmann. Defendant American & Foreign Insurance Company ("American") is a corporation duly licensed to transact business in the State of Connecticut and to issue insurance policies.

On or about June 17, 2001, a rainstorm caused water damage to the interior of the plaintiffs' home, including extensive damage to the kitchen floor. The plaintiffs subsequently filed a damage claim with American, the issuer of their homeowner's policy. The plaintiffs allege that it was part of the contract with American that any claims made under the homeowners policy would be thoroughly investigated in a timely manner.

In July 2001, American had the damage evaluated and estimated the cost of repairs, including removal of the linoleum kitchen floor. In September 2001, repairs on the house were begun, and in October, workers recommended by American began removing the linoleum floor by "sanding and/or grinding the linoleum" (Compl. Count One, P 10), which transformed the linoleum into a fine powder. The powder was released into the air and

settled over all the interior surfaces of the home and its contents. The linoleum powder contained asbestos in an unhealthy [*3] and unsafe concentration.

The plaintiffs allege that American failed to recommend skilled, competent and knowledgeable workers to make the repairs and that American further failed to quickly identify and abate the hazard created by removing the floor, which extended the plaintiffs' exposure to hazardous levels of asbestos.

## II. LEGAL STANDARD

Dismissal pursuant to *Rule 12(b)(6) of the Federal Rules of Civil Procedure* for failure to state a claim upon which relief may be granted is not warranted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)*. The task of the court in ruling on a *Rule 12(b)(6)* motion "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc., 748 F.2d 774, 779 (2d Cir. 1984)* (internal quotation marks and citation omitted). The court is required to accept as true all factual allegations in the [*4] complaint and must draw all reasonable inferences in favor of the plaintiff. *See Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994)*. However, "while the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." *Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996). See also DeJesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996)* ("A complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of *Rule 12(b)(6)*."); *Furlong v. Long Island Coll. Hosp., 710 F.2d 922, 927 (2d Cir. 1983)* (noting that while "*Conley* permits a pleader to enjoy all favorable inferences from facts that have been pleaded, [it] does not permit conclusory statements to substitute for minimally sufficient factual allegations.").

## III. DISCUSSION

### A. Counts Three and Eighteen: *Implied Covenant of Good Faith and Fair Dealing*

There is an implied covenant of good faith and fair dealing between insurance companies and their insureds. *Buckman v. People Express, Inc., 205 Conn. 166, 170, 530 A.2d 596 (1987)*. In [*5] order to state a claim for bad faith under Connecticut law, three essential elements must be alleged;

first, that the plaintiff and the defendant were parties to a contract under which the plaintiff reasonably expected to receive certain benefits; second, that the defendant engaged in conduct that injured the plaintiff's right to receive some or all of those benefits; and third, that when committing the acts by which it injured the plaintiff's right to receive benefits he reasonably expected to receive under the contract, the defendant was acting in bad faith.

*Franco v. Yale Univ., 238 F. Supp. 2d 449, 455 (D. Conn. 2002), aff'd, 80 Fed. Appx. 707 (2d Cir. 2003)*.

The plaintiffs allege that American made "express and/or implied representations" that any claim submitted would be thoroughly investigated in good faith (Compl. Count Three, P 9.), and that American represented that any workers hired to repair the house would be skilled, competent and knowledgeable. The plaintiffs also allege that American had a duty to "act fairly and reasonably in investigating and satisfying claims made pursuant to the policy" (Compl. Count Three, P 10), a duty to recommend [*6] skilled, competent and knowledgeable workers to make the repairs, and a duty to promptly fix the hazardous condition created as a result of the method used to remove the linoleum. The Complaint alleges that American failed in locating skilled, competent and knowledgeable individuals and further failed to perform its duty to inspect and abate the hazard created by the sanding and/or grinding the linoleum floor.

In order to satisfy the third element of this claim, the plaintiffs must allege facts that could show that American was acting in bad faith when it recommended the workers who performed the repairs or when it was unresponsive to the plaintiffs' requests once unsafe conditions were created. In order to have acted in bad faith, American must have "engaged in conduct designed to mislead or to deceive . . . or a neglect or refusal to fulfill some duty or some contractual obligation not prompted by an honest mistake as to one's rights or duties." *Elm St. Builders, Inc. v. Enter. Park Condo. Ass'n, Inc., 63 Conn. App. 657, 667-68, 778 A.2d 237 (2001)* (citation and internal quotation marks omitted), "An insurer may not cut off benefits on the basis of unsupported determinations [*7] resulting from its arbitrary failure or refusal to properly perform the claims examination function." *Uberti v. Lincoln Nat. Life Ins. Co., 144 F. Supp. 2d 90, 104 (D. Conn. 2001)*. However, the plaintiffs do not allege facts that could show such arbitrary conduct. "[A] mere coverage dispute or negligence by an insurer in conducting an investigation," *Martin v. Am. Equity Ins. Co., 185 F. Supp. 2d 162, 165 (D. Conn. 2002)*, is not sufficient to state a claim of bad faith against an insurer.

Accordingly, the allegations in the Complaint fail to state a claim for breach of the implied covenant of good faith and fair dealing, and Counts Three and Eighteen are being dismissed.

### B. *Counts Four and Twelve: CUIPA and CUTPA*

Count Four is a claim brought pursuant to the Connecticut Unfair Insurance Practices Act, *Conn. Gen. Stat. §§ 38a-816 et seq.* ("CUIPA"). Under *§ 38a-816(6)*, CUIPA requires that, in order to be considered an unfair practice, certain claim settlement practices occur with such frequency that they indicate a general business practice.

The Complaint fails to allege facts that could support a [*8] conclusion that the defendant's actions were part of a general business practice. The mere allegation that American failed to properly abate the asbestos contamination at the plaintiffs' home is not sufficient to support a conclusion that there was a general practice of treating insureds the way the plaintiffs were treated, and thus state a claim for a CUIPA violation. Thus, the plaintiffs have failed to allege a violation of CUIPA. This means that a necessary predicate to stating a claim pursuant to the Connecticut Unfair Trade Practices Act, *Conn. Gen. Stat. §§ 42-110a et seq.* ("CUTPA") is absent. "A plaintiff may not bring a cause of action under CUTPA based on conduct, which does not also violate CUIPA where the alleged misconduct is related to the insurance industry." *O&G Indus. v. Travelers Prop. Cas. Corp., 2001 Conn. Super. LEXIS 2568, No. 010084433S, 2001 WL 1178709, at *3 (Conn. Super. Ct. Sept. 7, 2001).* Thus, the allegations in the Complaint also fail to state a claim for violation of CUTPA. Accordingly, Counts Four and Twelve are being dismissed.

### C. Counts Six, Thirteen and Fourteen: *Negligent Infliction of Emotional Distress*

To prevail [*9] on a claim for negligent infliction of emotional distress under Connecticut law, the "plaintiff has the burden of pleading and establishing that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that the distress, if it were caused, might result in illness or bodily harm." *Morris v. Hartford Courant Co., 200 Conn. 676, 683, 513 A.2d 66 (1986)* (citation, internal quotation marks and emphasis omitted).

The Complaint alleges that the plaintiffs were exposed to an unsafe concentration of asbestos as a result of the method used to remove the linoleum floor and that American failed to identify and remedy the problem quickly. However, the plaintiffs fail to allege that American had any knowledge that the kitchen floor contained asbestos. In the absence of such an allegation, the claim is, in substance, one that the removal of the floor, which

was done to repair water damage to the home, and/or failure to identify and remedy the problem that resulted from removal of the floor, created an unreasonable risk of causing emotional distress to the plaintiffs. Such allegations are not sufficient to state a claim for [*10] negligent infliction of emotional distress. Accordingly, Counts Six, Thirteen and Fourteen are being dismissed.

### D. Counts Seven and Fifteen: *Intentional Infliction of Emotional Distress*

In order to state a claim for intentional infliction of emotional distress under Connecticut law, the plaintiff must allege: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton v. Bd. of Educ., 254 Conn. 205, 210, 757 A.2d 1059 (2000).*

Drawing all reasonable inferences in favor of the plaintiffs, they have failed to satisfy the first and second elements of the claim because they do not allege that American knew or should have known that asbestos would be released as a consequence of the removal of the linoleum floor. In the absence of such an allegation, one cannot reasonably conclude that American intended to inflict emotional distress, or should have known [*11] it was a likely result of its conduct, nor that American's conduct was extreme and outrageous. *See Appleton, 254 Conn. at 210-11* ("Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."). Accordingly, Counts Seven and Fifteen are being dismissed.

### E. Counts Eight and Sixteen: *Recklessness*

The Connecticut Supreme Court has held that

> Recklessness "requires a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man," and the actor "must recognize that his conduct involves a risk substantially greater . . . than that which is necessary to make his conduct negligent."

*Bishop v. Kelly, 206 Conn. 608, 614-15, 539 A.2d 108 (1988)* (internal citation and quotation omitted). "There is a wide difference between negligence and a reckless disregard of the rights or safety of others, and a com-

2006 U.S. Dist. LEXIS 16286, *

plaint should employ language [*12] explicit enough to clearly inform the court and opposing counsel that reckless misconduct is relied on." *Dumond v. Denehy, 145 Conn. 88, 91, 139 A.2d 58 (1958).* "Simply using the word 'reckless' or 'recklessness' is not enough. A specific allegation setting out the conduct that is claimed to be reckless or wanton must be made." *Id.* "The reiteration of acts previously asserted to support a cause of action in negligence, without more, cannot be transformed into a claim of reckless misconduct by mere nomenclature." *Comparone v. Cooper, 1992 Conn. Super. LEXIS 2526, CV-92-293125, 1992 WL 219293, *2 (Conn. Super., Aug. 27, 1992).*

Here, the plaintiffs set forth factual allegations in Counts One and Nine and label them negligent and then set forth the same factual allegations in Counts Eight and Sixteen, with no additional allegations as to the wrongful acts or omissions by American, but label them reckless. "Where one count of a complaint sounds in negligence and another count attempts to state a cause of action for recklessness by relying on the same fact pattern as the negligence count and simply referring back to such con-

duct as recklessness, a cause of action for recklessness [*13] has not been sufficiently alleged." *Anderson v. Ansaldi, 1993 Conn. Super. LEXIS 176, CV-92-0452576S, 1993 WL 21469, *1 (Conn. Super., Jan. 22, 1993).* Accordingly, Counts Eight and Sixteen are being dismissed.

## IV. *CONCLUSION*

For the reasons set forth above, American's Motion to Dismiss, or in the Alternative, Motion for More Definite Statement (Doc. No. 24) is hereby GRANTED. Counts Three, Four, Six, Seven, Eight, Twelve, Thirteen, Fourteen, Fifteen and Eighteen are hereby DISMISSED, and the request for a more definite statement is thereby rendered moot.

It is so ordered.

Dated this 30th day of March 2006, at Hartford, Connecticut.

/s/Alvin W. Thompson

United States District Judge

FOCUS - 13 of 25 DOCUMENTS



Positive
As of: Jan 27, 2009

**Radesky v. First American Title Insurance Co., et al.**

**No. 3:02cv1304(JBA)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT**

*2003 U.S. Dist. LEXIS 15969*

**August 29, 2003, Decided**

**DISPOSITION:**      Defendant Kavanagh's motion to dismiss denied. Other defendants' motion to dismiss granted in part and denied in part.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff former employee sued defendants, her former employer, her former supervisor, and two managers, for **sexual harassment,** retaliation, intentional and **negligent** infliction of emotional distress, intrusion upon seclusion, and **negligent hiring,** supervision, and retention. The employer and the managers moved to dismiss the common law claims, and the supervisor moved to dismiss the retaliation claim.

**OVERVIEW:** The employee claimed that the supervisor sexually harassed her and that the mangers failed to follow proper reporting procedures. The employee was promoted, but the supervisor continued to require her to work as his assistant. The supervisor eventually was terminated; the employee's position was then eliminated. The court found that the allegations did not rise to the level of extreme and outrageous conduct on the part of the employer and the managers, requiring dismissal of the intentional infliction of emotional distress claim. As the only allegedly wrongful conduct related to the employee's termination was that it was wrongfully motivated, she could not state a claim for negligent infliction of emotional distress. The employer could not be held vicariously liable for the supervisor's alleged invasion of privacy, as the supervisor's alleged harassment was not within the scope of his employment. However, the employee did adequately allege that the employer was negligent in its hiring, supervision, and retention of the su-

pervisor and the managers. The supervisor's insistence that the employee continue as his assistant following her promotion stated a claim for retaliation.

**OUTCOME:** The employer and the managers' motion to dismiss was granted as to the claims of intentional and negligent infliction of emotional distress and as to intrusion upon seclusion and was denied as to the negligence claim. The supervisor's motion to dismiss was denied.

**CORE TERMS:** sexual harassment, emotional distress, infliction, outrageous, termination, retaliation, invasion of privacy, sexual, citations omitted, supervisor's, termination of employment, vicariously liable, terminated, seclusion, tortious, sexual assault, wrongfully-motivated, furtherance, counseling, intrusion, distress, priest's, hiring, personal relationship, reporting, pursuit, manager, assured, intentional tort, failure to state a claim

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
*Civil Procedure > Summary Judgment > General Overview*
[HN1] See *Fed. R. Civ. P. 12(b).*

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
*Civil Procedure > Dismissals > Involuntary Dismissals > Failures to State Claims*

Case 3:08-cv-00322-JCH   Document 68   Filed 01/28/09   Page 24 of 38

Page 2
2003 U.S. Dist. LEXIS 15969, *

[HN2] When deciding a motion to dismiss, a court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim which would entitle him or her to relief. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.

*Torts > Intentional Torts > Intentional Infliction of Emotional Distress > Elements*
[HN3] In order to establish the tort of intentional infliction of emotional distress under Connecticut law, a plaintiff must allege (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress and (4) that the emotional distress sustained by the plaintiff was severe. With respect to the requirement that the alleged conduct be extreme and outrageous, whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. Only where reasonable minds disagree does it become an issue for the jury.

*Civil Procedure > Remedies > Damages > Punitive Damages*
*Torts > Damages > Punitive Damages > Conduct Supporting Awards*
*Torts > Intentional Torts > Intentional Infliction of Emotional Distress > Elements*
[HN4] With respect to a claim under Connecticut law of intentional infliction of emotional distress, because the element of intent is separate from the requirement that the behavior be extreme and outrageous, the question is whether the defendants' conduct, not the motive behind such conduct, is itself extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Labor & Employment Law > Discrimination > Racial Discrimination > Employment Practices > Discharges*
*Torts > Intentional Torts > Intentional Infliction of Emotional Distress > General Overview*
*Torts > Negligence > Actions > Negligent Infliction of Emotional Distress > General Overview*
[HN5] A mere termination of employment, even if wrongfully motivated, is not extreme and outrageous for purposes of an intentional infliction of emotional distress claim under Connecticut law.

*Labor & Employment Law > Wrongful Termination > Remedies > Compensatory Damages*
*Torts > Negligence > Actions > Negligent Infliction of Emotional Distress > General Overview*
[HN6] The Connecticut Supreme Court has clarified that damages for negligent infliction of emotional distress are not recoverable for injury incurring in the context of an ongoing employment relationship. Thus, a plaintiff's claim of negligent infliction of emotional distress is viable only if based upon unreasonable conduct in the termination process and not based solely on the termination itself. A wrongful termination is neither a necessary nor a sufficient predicate for a claim of negligent infliction of emotional distress.

*Torts > Intentional Torts > Invasion of Privacy > Intrusion > General Overview*
[HN7] Under Connecticut law, invasion of privacy in the form of intrusion upon seclusion is an intentional tort.

*Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Employer Liability > General Overview*
*Torts > Business Torts > General Overview*
*Torts > Vicarious Liability > Employers > Scope of Employment > General Overview*
[HN8] The Connecticut Supreme Court has long adhered to the principle that in order to hold an employer liable for the intentional torts of his employee, the employee must be acting within the scope of his employment and in furtherance of the employer's business. While the question is often one of fact for the jury, there are times when conduct is so clearly outside the scope employment that it is a question of law. The mere fact that the tortfeasor-employee committed the tortious acts during business hours or at the employer's place of business is not sufficient to impute vicarious liability. Absent special circumstances tending to show otherwise, sexual harassment and sexual assault are outside the scope of an em-

2003 U.S. Dist. LEXIS 15969, *

ployee's employment and not in furtherance of the employer's business.

*Torts > Negligence > Proof > Elements*
[HN9] The four elements of negligence under Connecticut law are duty, breach, causation and injury. A breach of duty by the defendant and a causal connection between the defendant's breach of duty and the resulting harm to the plaintiff are essential elements of a cause of action in negligence.

COUNSEL: For Laura Radesky, PLAINTIFF: Vlad Gerard Spitzer, Spitzer & Brey, Westport, CT USA. Lewis D Brey, Spitzer & Brey, Westpoint, CT USA. Huma Khan, Spitzer & Brey, Westport, CT USA.

For First American Title Insurance Co, Stephen Maggiola, Corrine McManus, DEFENDANTS: Daniel Schwartz, Day, Berry & Howard, Stamford, CT USA. Jennifer L Sachs, Day, Berry & Howard, Stamford, CT USA. Sandra J Young, Allen, Matkins, Leck, Gamble & Mallory, San Diego, CA USA.

For James Kavanagh, Esq., DEFENDANT: David W Rubin, Stamford, CT USA.

JUDGES: [*1] Janet Bond Arterton, U.S.D.J.

OPINION BY: Janet Bond Arterton

OPINION

*Ruling on Motions to Dismiss [Docs. # # 24, 28]*

Defendants First American Title Insurance Co. ("First American"), Stephen Maggiola and Corrine McManus have moved [Doc. # 24] to dismiss certain common law claims in Plaintiff Laura Radesky's complaint, which principally charges sexual harassment and retaliation. Defendant James Kavanagh has moved [Doc. # 28] to dismiss the portion of Radesky's complaint alleging retaliation by Kavanagh for Radesky's report of sexual harassment. For the reasons set out below, (1) the motion of First American, Maggiola and McManus is granted as to the intentional and negligent infliction of emotional distress and invasion of privacy counts against those defendants (Counts 12-15 ) and denied as to the negligence count (Count 18), and (2) Kavanagh's motion is denied.

I. Factual Background [1]

 [1]   The following recitation is taken from plaintiff's Amended Complaint [Doc. # 16], the facts of which are taken as true for the purposes of this motion. *See Cooper v. Parsky, 140 F.3d 433, 440*

*(2d Cir. 1998)*. While plaintiff has attached a series of documents to her opposition brief, only the allegations in the complaint have been considered by the Court in ruling on this motion. *See Fed. R. Civ. P. 12(b)* [HN1] ("If, on a motion asserting the defense [of failure] to state a claim upon which relief can be granted, matters outside the pleading are presented to *and not excluded by the court*, the motion shall be treated as one for summary judgment and disposed of as provided in *Rule 56*, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by *Rule 56*.") (emphasis added).

[*2] Radesky was employed at First American from 1996 through August 10, 2001, initially in the Data Entry department and subsequently as Policy Control Supervisor. Radesky alleges that her supervisor, James Kavanagh, "aggressively attempted to initiate a personal relationship" with her (Am. Compl. P6) from 1999 until May 2001, when Kavanagh's employment was terminated. These aggressive attempts allegedly included inappropriate physical touching, "relentless[] . . . pursuit" of a personal relationship outside of work, and "flirtatious comments." (*Id.*) After Radesky reported Kavanagh's behavior to First American Vice President Stephen Maggiola in September 2000, Maggiola told her that he had met with Kavanagh and told him to conduct himself more professionally, but Maggiola "refused to document the incident or make [Regional Vice President Peter Norden] aware of the situation," *id.* P8, despite Radesky's belief that First American's sexual harassment policy required such documentation and reporting.

After a subsequent multi-day episode of alleged pursuit of a personal relationship, Radesky met with First American Office Manager Corrine McManus on November 25, 2000 and informed [*3] her of this episode. Radeksy "confided to McManus that she was not comfortable reporting Kavanagh's actions because she feared retaliation," *id.* P12, and McManus assured her that she would not be penalized.

> After speaking to Maggiola, McManus informed [Radesky] that Maggiola was going to discuss [Radesky's] complaint with Kavanagh. As [Radesky] was feeling ill, she left work early. Later that day, Kavanagh arrived at [Radesky's] home and began pressuring her to let him into her home.

*Id.* Radesky reported the incident to Maggiola, who did not speak to Kavanagh until several days later ( Novem-

ber 29, 2000 ), when Maggiola warned Kavanagh not to contact Radesky or visit her home.

In December 2000, Radesky was promoted to Policy Control Supervisor "and she attempted to limit her contact with Kavanagh," but Kavanagh "continued to insist that [Radesky] assist him, which made [Radesky] extremely uncomfortable." (*Id.* P14.) In February 2001, Kavanagh told Radesky that he had spoken with Maggiola and Radesky was to act as Kavanagh's assistant and resume working closely with him, although Maggiola never gave Radesky this instruction himself. From March [*4] 2001 to May 2001, Kavanagh "blatantly and openly continued his relentless pursuit of a relationship" with Radesky, *id.* P16, and made another uninvited visit to her home in April 2001.

In May 2001, Radesky again reported Kavanagh's behavior to McManus, and told McManus "that she could no longer continue working for [First American] in such a hostile working environment." (*Id.* P18.) McManus assured Radesky that she would speak to Maggiola, and Maggiola subsequently informed Radesky that he had forwarded her complaint to First American's regional manager, and that Kavanagh's employment had been terminated, but that Radesky was not to reveal the reasons for Kavanagh's termination to anyone. After Kavanagh's termination,

> Maggiola and McManus treated [Radesky] in a condescending manner. Many of the employees refused to interact with [Radesky] and socially isolated her. The managers in the office ostracized [Radesky] and refused to assign her work[,] thereby reducing [her] workload and duties.

*Id.* P20.

Despite his termination, Kavanagh "continued to maintain a close relationship" with First American, *id.* P21, driving a First American company car [*5] and coming into frequent contact with Radesky by virtue of his new employment with an agent of First American. In June 2001, Radesky received a new job description that included fewer duties, and after a medical leave from late June through early July, her work duties were again reduced. Radesky asked Maggiola for an explanation, and Maggiola "assured her" that there was no problem with her work and that [First American] had big plans for the policy department and that [Radesky] would have 'a big part in this.'" (*Id.* P24.)

On August 10, 2001, McManus prepared and Maggiola gave Radesky her annual performance review.

Despite prior consistently positive evaluations, this review charged that Radesky's "working relationships are frequently unsatisfactory," and that

> too often Laura has exhibited a lack of tact or consideration to others. She can be difficult to work with because she displays negative and rude behavior . . . she would understand others better if she did not take things personally. Her attitude in meetings has been unsatisfactory.

*Id.* P28 (internal quotation omitted; alterations in original). When Radesky went to discuss her evaluation with Maggiola, [*6] she was informed that her position had been eliminated effective that day. After exhausting her administrative remedies, Radesky commenced this suit against First American, McManus, Maggiola and Kavanaugh.

## II. Standard

[HN2] When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. *Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984).* A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim which would entitle him or her to relief. *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957).* "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974).*

## III. First American's, Maggiola's and McManus's Motion to Dismiss

[*7] A. Intentional Infliction of Emotional Distress [HN3] In order to establish the tort of intentional infliction of emotion distress, Radesky must allege:

> (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress and (4) that the emotional distress sustained by the plaintiff was severe.

*Petyan v. Ellis, 200 Conn. 243, 253, 510 A.2d 1337 (1986)* (citations omitted). With respect to the requirement that the alleged conduct be extreme and outrageous, "whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine . . . . Only where reasonable minds disagree does it become an issue for the jury." *Appleton v. Board of Educ., 254 Conn. 205, 211, 757 A.2d 1059 (2000)* (citation omitted). [HN4] Because the element of intent is separate from the requirement that the behavior be extreme and outrageous, the question is whether the defendants' [*8] *conduct*, not the motive behind such conduct, is itself extreme and outrageous:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

Restatement (Second) of Torts § 46, cmt d; *accord Miner v. Town of Cheshire, 126 F. Supp. 2d 184, 195 (D. Conn. 2000)*.

McManus and Maggiola (and by extension First American) are alleged to have: (1) taken insufficient action in response to Radesky's complaints about Kavanagh, (2) lessened her job duties, and (3) terminated her employment. With the motivation behind this conduct irrelevant to the extreme and outrageous inquiry, Radesky's allegations against First American, McManus and Maggiola do not rise to the level [*9] of extreme and outrageous conduct. *See Miner, 126 F. Supp. 2d at 195* (employer's alleged refusal to protect employee from supervisor's sexual harassment not sufficiently extreme or outrageous to support intentional infliction claim); *Newtown v. Shell Oil Co., 52 F. Supp. 2d 366, 375 (D. Conn. 1999)* (negligent failure to prevent sexual harassment and wrongfully-motivated termination of employment insufficient to support a claim of intentional infliction of emotional distress); *Hill v. Pinkerton Sec. & Investigation Servs., 977 F. Supp. 148, 160 (D. Conn. 1997)* (no extreme and outrageous conduct where employee was transferred to two other locations, disci-

plined, and reprimanded for complaining of race discrimination); *Venterina v. Cummings & Lockwood, 117 F. Supp. 2d 114, 120 (D. Conn. 1999)* [HN5] (mere termination of employment, even if wrongfully-motivated, not extreme and outrageous). Accordingly, this claim against First American, Maggiola and McManus must be dismissed.

B. Negligent Infliction of Emotional Distress [HN6] The Connecticut Supreme Court has now clarified that damages for negligent infliction of emotional distress [*10] are not recoverable for injury incurring in the context of an ongoing employment relationship. *Perodeau v. City of Hartford, 259 Conn. 729, 762-763, 792 A.2d 752 (2002)*. Thus, Radesky's claim of negligent infliction of emotional distress is viable only if based upon unreasonable conduct in the termination process and not based solely on the termination itself: "[A] wrongful termination is neither a necessary nor a sufficient predicate for a claim of negligent infliction of emotional distress." *Id. at 751*. Thus, the focus is on the method or means employed to effectuate or give notice of the termination. Here, the only allegedly wrongful conduct related to the termination process is the allegation that Radesky's termination was wrongfully-motivated. *Parsons v. United Techs. Corp., 243 Conn. 66, 88-89, 700 A.2d 655 (1997)* ("The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress."); *compare Chen v. Pitney Bowes Corp., 195 F. Supp. 2d 368 (D. Conn. 2002)* (negligent infliction claim related to termination of employment [*11] survived summary judgment because reasonable jurors could find the way the employer conveyed to plaintiff its notice of her termination was unreasonable under the circumstances).

C. Invasion of Privacy

Radesky's complaint also alleges the tort of intrusion upon seclusion (one subset of invasion of privacy) against Kavanagh and derivatively (*see* Pl.'s Mem. Opp. [Doc. # 26] at 22) First American. [2] Because [HN7] invasion of privacy in the form of intrusion upon seclusion is an intentional tort, *Giantis v. American Mortgage Services, LP, 2002 Conn. Super. LEXIS 1364, No. CV000092711S, 2002 WL 1009703 at *6 (Conn. Super. April 24, 2002 )*, First American argues that this claim against it must be dismissed because it cannot be held vicariously liable unless the tort was committed within the scope of Kavanagh's employment.

> 2   Plaintiff relies on a line of cases holding that the intrusion upon seclusion variety of invasion of privacy is not limited to inclusions upon *physical* seclusion. E.g., *Phillips v. Smalley Maintenance Services, Inc., 435 So. 2d 705 (Ala. 1983)*

(supervisor's "intrusive and coercive sexual demands upon [employee]" were an "examination into her private concerns, that is, improper inquiries into her personal sexual proclivities and personality," and were actionable as an invasion of privacy) (internal quotations omitted).

[*12] [HN8] The Connecticut Supreme Court "has long adhered to the principle that in order to hold an employer liable for the intentional torts of his employee, the employee must be acting within the scope of his employment and in furtherance of the employer's business." *A-G Foods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 208, 579 A.2d 69 (1990) (citing Cardona v. Valentin, 160 Conn. 18, 22, 273 A.2d 697 (1970); Pelletier v. Bilbiles, 154 Conn. 544, 547, 227 A.2d 251 (1967); Antinozzi v. A. Vincent Pepe Co., 117 Conn. 11, 13, 166 A. 392 (1933); Son v. Hartford Ice Cream Co., 102 Conn. 696, 699, 129 A. 778 (1925)).* While the question is often one of fact for the jury, there are times when conduct is so clearly outside the scope employment that it is a question of law. *Id. at 207* (citations omitted). The mere fact that the tortfeasor-employee committed the tortious acts during business hours or at the employer's place of business is not sufficient to impute vicarious liability. *See Cardona, 160 Conn. at 22-24* (poolroom owner not vicariously liable for employee's intentional stabbing of [*13] patron in poolroom); *A-G Foods, 216 Conn. at 209* ("The factual conclusion that Spinelli's fraud occurred during business hours, however, is not sufficient to support the conclusion that Spinelli was acting within the scope of his employment.") (citations omitted).

Absent special circumstances tending to show otherwise, *see infra* note 5, sexual harassment and sexual assault are outside the scope of an employee's employment and not in furtherance of the employer's business. *See Roberts v. Circuit-Wise, Inc., 142 F. Supp. 2d 211, 217 (D. Conn. 2001)* (sexual harassment); *Abate v. Circuit-Wise, Inc., 130 F. Supp. 2d 341, 347-348 (D. Conn. 2001)* (sexual harassment); *Gutierrez v. Thorne, 13 Conn. App. 493, 498-499, 537 A.2d 527 (1988)* (sexual assault); *Girden v. Sandals Int'l, Ltd., 206 F. Supp. 2d 605, 607 (S.D.N.Y. 2002)* (applying Connecticut law) (sexual assault); *Reynolds v. Zizka, 1998 Conn. Super. LEXIS 619, No. CV 950555222S, 1998 WL 123047 at *3 (Conn. Super. Mar. 5, 1998)* (sexual exploitation) ("Courts of this state have held as a matter of law that when the tortfeasor-employee's activity with the alleged [*14] victim became sexual, the employee abandoned and ceased to further the employer's business.") (citations omitted). The acts that Radesky claims make Kavanagh liable for invasion of privacy appear to be identical to her allegations of acts constituting sexual harassment, *see supra* note 3, and Radesky's complaint alleges no facts

from which it could be concluded that Kavanagh's alleged conduct was in the scope of his employment or in furtherance of First American's business. [1] Thus, Radesky has failed to state a claim against First American on a respondeat superior theory and the invasion of privacy count against First American must be dismissed.

> 3  For example, in *Mullen v. Horton, 46 Conn. App. 759, 700 A.2d 1377 (1997)*, the defendant, a priest/psychologist who counseled plaintiff, began to have sexual contact with her during counseling sessions. The court held that the question of whether his employer was vicariously liable was a question of fact for the jury: "a trier of fact could reasonably determine that Horton's sexual relationship with the plaintiff was a misguided attempt at pastoral-psychological counseling, or even an unauthorized, unethical, tortious method of pastoral counseling, but not an abandonment of church business." *Id. at 765-66; see also Martinelli v. Bridgeport Roman Catholic Diocesan Corp., 989 F. Supp. 110, 118 (D. Conn. 1997)* (plaintiff's allegation that at least one sexual encounter with priest was presented to him as similar to Holy Communion and another incident occurred immediately after plaintiff received the sacrament of reconciliation in an unorthodox fashion was sufficient to create a jury question as to whether church was vicariously liable for priest's abuse).

[*15] D. Negligence

The last count of Radesky's complaint asserts that First American was negligent in its hiring, supervision and retention of Kavanagh, McManus and Maggiola. While First American claims that the Amended Complaint "does not allege that First American either knew or should have known prior to hiring any individual that [such individual] would allegedly engage in tortious behavior" and fails to allege that First American failed to supervise these individuals, Mem. Supp. [Doc. # 25] at 10-11, Radesky's complaint adequately pleads her negligence claims against First American by pleading [HN9] the four elements of negligence: duty (Am. Compl. P158), breach (*Id.* P160), causation and injury (*Id.* P161). *See Catz v. Rubenstein, 201 Conn. 39, 513 A.2d 98 (1986)* ("A breach of duty by the defendant and a causal connection between the defendant's breach of duty and the resulting harm to the plaintiff are essential elements of a cause of action in negligence.") (citations omitted).

Far from being "silent as to the purported fitness or competence of Kavanagh, Maggiola or McManus" (as defendants maintain, *see* [Doc. # 25] at 10) [*16] Radesky alleges that First American "knew or should

2003 U.S. Dist. LEXIS 15969, *

have known that Kavanagh, Maggiola, and McManus had a propensity to engage in the behavior described herein," Am. Compl. P159, i.e., were unfit or incompetent for their positions. Radesky's complaint is replete with factual allegations that these employees failed to follow First American's established standards of conduct, [4] yet discipline was either tardy (as when Kavanagh was not fired until after Radesky complained several times) or non-existent (as Maggiola and McManus were never disciplined). Thus, Radesky's complaint adequately pleads First American's negligence in the hiring, supervision and retention of Kavanagh, McManus and Maggiola, and the motion to dismiss count eighteen is denied.

> 4   *E.g.*, the numerous allegations of sexual harassment by Kavanagh throughout the complaint, all allegedly in violation of First American's sexual harassment policy; Am. Compl. P8 (Maggiola did not follow First American's sexual harassment reporting policy with regard to the September 2000 complaints of sexual harassment); *id.* P28 (McManus violated First American's policy on retaliation for sexual harassment complaints by retaliating against her with a negative performance review).

[*17]  IV. Kavanagh's Motion to Dismiss

Kavanagh argues that the retaliation counts against him (Counts Six and Eight) are legally insufficient be-cause the retaliation complained of in the complaint (which he reads as encompassing only Radesky's demotion, negative performance review and discharge) occurred after his employment was terminated in May 2001. In opposition, Radesky points to Kavanagh's directive in February 2001 that Radesky should once again act as his assistant despite her promotion to Policy Control Supervisor as an act of retaliation. Pl.'s Mem. Opp. [Doc. # 31] at 9. The facts constituting this alleged act of retaliation are clearly pled in the complaint, *see* Am. Compl. P15, and such conduct could be viewed as demoting her to a lower position. Because Radesky's complaint adequately alleges unlawful retaliation, Kavanagh's motion must be denied.

V. Conclusion

For the reasons set out above, (1) the motion [Doc. # 24] of First American, Maggiola and McManus is granted as to the intentional and negligent infliction of emotional distress and invasion of privacy counts against those defendants (Counts 1215 ) and denied as to the negligence count (Count 18), [*18] and (2) Kavanagh's motion [Doc. # 28] is denied.

IT IS SO ORDERED.

/s/ Janet Bond Arterton, U.S.D.J.

**Dated at New Haven, Connecticut, this 29th day of August, 2003.**

2 of 4 DOCUMENTS



Cited
As of: Jan 27, 2009

**John Doe, PPA v. Jose L. Abrahante**

**CV 97040311S**

**SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF NEW HAVEN, AT NEW HAVEN**

*1998 Conn. Super. LEXIS 1177*

**April 28, 1998, Decided**
**April 28, 1998, Filed**

**NOTICE:** [*1] THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

**DISPOSITION:** The motion to strike is granted as to negligent hiring and is denied as to negligent retention.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant YWCA brought a motion in which it sought to have the court strike the negligent hiring and negligent retention claims contained in plaintiff injured party's complaint that was filed after plaintiff was sexually assaulted by one of defendant's employees.

**OVERVIEW:** After plaintiff was sexually assaulted by defendant employee of the YMCA, plaintiff brought suit, the second count of which made claims against the YMCA of negligent hiring and negligent retention of the employee. The YMCA filed a motion, seeking to have the court strike those portions of count two of the complaint. The court found that: (1) the YMCA did not ask to have stricken the entire second count; (2) when read in the light most favorable to plaintiff the second count stated an independent cause of action sounding in negligence based upon negligent supervision; (3) this claim did not depend on vicarious liability imposed under the doctrine of respondeat superior; (4) the YMCA asked the

court to strike a cause of action diffused over a series of paragraphs but less than an entire count and, by its own admission, not embodied in a single paragraph; (5) plaintiff did not sufficiently allege any particular background or misconduct at the time of hiring from which the YMCA knew or should have known that the employee was reasonably likely to commit the alleged sexual assault; and (6) there was no evidence to support a claim of negligent hiring.

**OUTCOME:** The court granted the YMCA's motion to strike as to negligent hiring but denied the motion as to negligent retention.

**CORE TERMS:** movant, retention, causes of action, negligent hiring, negligent supervision, sexual assault, emotional distress, respondeat, favorable

**LexisNexis(R) Headnotes**

*Torts > Business Torts > Negligent Hiring & Supervision > Elements*
[HN1] A number of jurisdictions recognize a cause of action for negligent retention of an employee. Negligent retention occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicate his unfitness and the employer fails to take further action.

**JUDGES:** Joseph A. Licari, Jr., Judge of the Superior Court.

**OPINION BY:** JOSEPH A. LICARI, JR.

**OPINION**

MEMORANDUM OF DECISION ON DEFENDANT YWCA'S MOTION TO STRIKE (# 112)

The defendant YWCA moves this court to cull various causes of action from the second count. In so moving the defendant has not asked to strike the entire second count. The court has reviewed its prior ruling on the movant's Request to Revise and finds no controlling precedent in that ruling.

The plaintiff raises the procedural barrier that a motion to strike less than a full count will not lie. The movant replies that it does where a single paragraph standing alone states an independent cause of action. The court must chart a course in these muddied waters.

When read in the light most favorable to the plaintiff the second count at least states an independent cause of action sounding in direct negligence against the movant based upon negligent supervision. [*2] It does not depend on vicarious liability imposed under the doctrine of respondeat superior. *Gutierrez v. Thorne, 13 Conn. App. 493, 537 A.2d 527 (1988).*

Paragraphs 1-11

The movant asks the court to strike these paragraphs "to the extent" they allege the theory of respondeat superior. This motion fails because it is procedurally defective. The defendant asks the court to strike a cause of action diffused over a series of paragraphs but less than an entire count and by its own admission not embodied in a single paragraph. *Zavo v. Montanaro, 1995 Conn. Super. LEXIS 205, 1995 WL 41336 (Conn. Super. 1995).* The merits of the movant's argument await another day. Motion denied as to paragraphs 1-11.

Paragraph 12B

When read in the light most favorable to the plaintiff this subparagraph is no more than a specific allegation of negligent supervision involving neither negligent hiring nor retention. Motion denied as to paragraph 12b.

Paragraph 12A

Paragraph 12a is more problematic in that it can be read to specifically state causes of action for negligent hiring and retention.

Insofar as negligent hiring is alleged the motion to strike is granted. Nowhere, even by inference, has the plaintiff [*3] sufficiently alleged any particular background or misconduct, that the movant knew or should have known about Mr. Abrahante, from which the movant knew or should have known that he was reasonably likely to commit the alleged sexual assault. *Petho v. Fuleki, 1993 Conn. Super. LEXIS 2804, 10 CONN. L. RPTR. 254, 1993 WL 446795 (Conn. Super, 1993).*

The movant's argument concerning a claim of damages for emotional distress connected to negligent hiring is moot. Moreover, paragraph 11 alleges as damages emotional distress caused by a sexual assault and battery independent of any negligent hiring claim.

In the absence of appellate guidance, upon the specific factual allegations of the complaint, this court cannot conclude as a matter of law that our own Supreme Court would not recognize a duty owed to the plaintiff by the movant, and a breach of that duty by **negligent retention** of the **individual** defendant.

[HN1] A number of other jurisdictions have recognized a cause of action for negligent retention. *Foster v. Loft, Inc., 26 Mass. App. Ct. 289, 526 N.E.2d 1309 (Mass.App.Ct. 1988).* Negligent retention occurs when, during the course of employment, the employer becomes aware or should become aware [*4] of problems with an employee that indicate his unfitness and the employer fails to take further action. *526 N.E.2d at p. 1311.* The plaintiff has alleged sufficient facts to raise a claim of negligent retention.

The motion to strike is granted as to negligent hiring and is denied as to negligent retention.

Joseph A. Licari, Jr.

Judge of the Superior Court



LEXSEE 1998 TEX. APP. LEXIS 6421



Positive
As of: Jan 28, 2009

## MICHAEL FONGE, Appellant v. UNITED INSURANCE COMPANY OF AMERICA, DAVID SMITH, AND MICHAEL WOOLDRIDGE, Appellees

### NO. 14-97-00154-CV

### COURT OF APPEALS OF TEXAS, FOURTEENTH DISTRICT, HOUSTON

### *1998 Tex. App. LEXIS 6421*

### October 1, 1998, Rendered
### October 1, 1998, Opinion Filed

**NOTICE:** [*1] PURSUANT TO THE TEXAS RULES OF APPELLATE PROCEDURE, UNPUBLISHED OPINIONS SHALL NOT BE CITED AS AUTHORITY BY COUNSEL OR BY A COURT.

**SUBSEQUENT HISTORY:** Motion for Rehearing of Petition for Review Overruled April 15, 1999. Petition for Review Denied February 25, 1999.

**PRIOR HISTORY:** On Appeal from the 113th District Court. Harris County, Texas. Trial Court Cause No. 95-58589.

**DISPOSITION:** Affirmed.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Appellant employee sought review of a decision of the 113th District Court, Harris County (Texas), which entered a summary judgment in favor of appellees, employer and supervisors, in appellant's employment discrimination action against appellees pursuant to *Tex. Lab. Code Ann. § 21.051.*

**OVERVIEW:** Appellant employee was an insurance salesman for appellee employer, under appellee supervisors. Appellant submitted an application, which appellee employer's underwriting department declined due to the applicant's medical history. Appellant was notified, but

he submitted a second application for the same applicant to a different division of appellee employer, failing to indicate the medical history. The application was declined, and an investigation followed. Shortly after receiving a letter from appellant's doctor, stating that appellant was unable to work due to a longstanding diabetic condition, appellees terminated appellant for underwriting violation. Appellant filed suit against appellees, alleging violations of *Tex. Lab. Code Ann. § 21.051* and intentional infliction of emotional distress. The trial court granted summary judgment to appellees, and appellant sought review. The court affirmed the trial court's decision, holding that appellant had failed to present evidence showing that the reason given for his termination was merely pretext and that this failure of proof precluded a finding that the termination constituted intentional infliction of emotional distress.

**OUTCOME:** The court affirmed the order of the trial court granting summary judgment to appellees, employer and supervisors, in appellant employee's suit for employment discrimination and intentional infliction of emotional distress because appellant had failed to show that the stated reason for his termination was merely a pretext, and, accordingly, he could not prove outrageous and extreme conduct on the part of appellees.

**CORE TERMS:** disability, summary judgment, underwriting, termination, judgment proof, emotional distress, pretext, prima facie case, terminated, outrageous, inflic-

1998 Tex. App. LEXIS 6421, *

tion, matter of law, diabetic, disabled, supervision, articulated, impairment, discrimination claim, issues of material fact, material fact, medical history, medical information, negligent hiring, nondiscriminatory reason, deposition testimony, terminating, knowingly, genuine, diabetes, warning

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Appellate Review > Standards of Review*
*Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview*
*Civil Procedure > Summary Judgment > Standards > General Overview*
[HN1] The appropriate standard to be followed when reviewing a summary judgment is as follows: 1. the movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law; 2. in deciding whether a disputed material fact issue precludes summary judgment, the court must take evidence favorable to the non-movant as true; and 3. the court must indulge every reasonable inference in favor of the non-movant and resolve any doubts in its favor.

*Civil Procedure > Summary Judgment > Appellate Review > General Overview*
*Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview*
[HN2] A defendant moving for summary judgment has the burden of demonstrating that there are no material fact issues concerning plaintiff's claims. A defendant meets this burden by submitting competent summary judgment proof that negates, as a matter of law, at least one element of the plaintiffs cause of action. Where the summary judgment order does not specify the grounds upon which summary judgment was granted, the reviewing court will affirm the judgment if any of the theories advanced in the motion is meritorious.

*Civil Rights Law > Protection of Disabled Persons > Americans With Disabilities Act > Scope*
*Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions > General Overview*
*Labor & Employment Law > Discrimination > Disability Discrimination > Federal & State Interrelationships*
[HN3] *Tex. Lab. Code Ann. § 21.051* provides, in pertinent part, that an employer may not discriminate against an individual because of his or her disability.

*Civil Rights Law > General Overview*
*Labor & Employment Law > Discrimination > Disability Discrimination > Employment Practices > Demotions & Promotions*
*Labor & Employment Law > Discrimination > Disability Discrimination > Federal & State Interrelationships*
[HN4] Because Texas has little interpretative case law, and because Tex. Lab. Code Ann. § 21 is meant to promote federal civil rights policy, Texas courts look to analogous federal law in interpreting ch. 21 when appropriate. The most closely analogous federal law prohibiting employment discrimination based on disability is the Americans with Disabilities Act, *42 U.S.C.S. § 12101 et seq.*

*Civil Rights Law > Protection of Disabled Persons > Americans With Disabilities Act > Scope*
*Labor & Employment Law > Discrimination > Actionable Discrimination*
[HN5] Federal courts apply a burden-shifting analysis to determine whether a plaintiff has established an actionable employment discrimination claim. Texas courts apply the same analysis to employment discrimination claims under *Tex. Lab. Code Ann. § 21.051*. Under this analysis, an employee bears the initial burden to present a prima facie case of discrimination. Once established, a prima facie case creates a presumption that the employer unlawfully discriminated against the employee. To rebut the presumption, the employer must produce evidence that it took the adverse employment action for a legitimate, nondiscriminatory reason. The employee must then demonstrate that the employer's articulated reason is merely a pretext for unlawful discrimination. Although the burden of production shifts, the burden of persuasion remains continuously with the employee.

*Civil Rights Law > Protection of Disabled Persons > Americans With Disabilities Act > Scope*
*Labor & Employment Law > Discrimination > Disability Discrimination > Proof > Burdens of Proof > Employee Burdens*
[HN6] To establish a prima facie case of discrimination on a claim under the Americans with Disabilities Act, *42 U.S.C.S. § 12101 et seq.*, a plaintiff must establish that: (1) he has a disability, (2) he was qualified for the job, and (3) the negative employment action occurred solely because of the disability.

*Civil Rights Law > Protection of Disabled Persons > Americans With Disabilities Act > Scope*

*Labor & Employment Law > Discrimination > Disability Discrimination > Federal & State Interrelationships*
[HN7] Discrimination and retaliatory laws are not intended to be vehicles for judicial second guessing or employment decisions, nor are they intended to transform the courts into personnel managers.

*Torts > Intentional Torts > Intentional Infliction of Emotional Distress > Elements*
[HN8] Not every employment dispute gives rise to a cause of action for intentional infliction of emotional distress. Some facts do give rise to the cause in the employment context. In such cases, the plaintiff must prove that (1) the defendant acted intentionally or recklessly, (2) the conduct was extreme and outrageous, (3) the defendant's actions caused him emotional distress, and (4) the resulting emotional distress was severe. Liability for outrageous conduct is found only where the conduct is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community. The court makes the initial determination whether, as a matter of law, a defendant's conduct may reasonably be regarded as extreme and outrageous.

*Labor & Employment Law > Employment Relationships > At-Will Employment > Duration of Employment*
*Labor & Employment Law > Employment Relationships > At-Will Employment > Exceptions > General Overview*
*Torts > Intentional Torts > Intentional Infliction of Emotional Distress > General Overview*
[HN9] Subject to certain narrow exceptions, employees in Texas may be terminated at will and without cause. Moreover, the fact of discharge itself cannot constitute outrageous behavior as a matter of law unless the discharge falls within one of the exceptions to the termination-at-will doctrine. A violation of *Tex. Lab. Code Ann. § 21.051* is an exception to the termination-at-will doctrine.

**JUDGES:** Harriet O'Neill, Justice. Panel consists of Chief Justice Murphy, Justices Hudson and O'Neill.

**OPINION BY:** Harriet O'Neill

**OPINION**

OPINION

Appellant, Michael Fonge, appeals from a summary judgment in favor of appellees, United Insurance Company of America, David Smith, and Michael Wooldridge

(collectively "United"), in an employment discrimination action. In two points of error, appellant contends the trial court erred in granting summary judgment because genuine issues of material fact exist as to whether United violated *Section 21.051 of the Texas Labor Code* and engaged in intentional infliction of emotional distress. We affirm.

Background and Procedural History

The summary judgment proof, viewed in the light most favorable to Fonge, shows that at the time of his termination Fonge was employed by United as an insurance sales agent under the supervision of District Manager Michael Wooldridge and Regional Vice-President David Smith, Wooldridge's [*2] immediate supervisor. As a sales agent, Fonge solicited new customers by selling insurance policies door to door. He also engaged in field underwriting, which included collecting pertinent information from applicants and reporting the information to United's underwriting department. If the applicants were accepted for coverage, Fonge would service the customers' accounts on a monthly basis, which included collecting premiums from policy holders and remitting them to United. United paid Fonge, in part, on commission for all new sales if the underwriting department approved the application he had written and issued a policy to the applicant.

On June 1, 1994, Fonge submitted an application for insurance on behalf of Rodney Newton, which United's underwriting department declined due to Newton's medical history. Fonge received notification that Newton's application had been denied. Nevertheless, on September 30, 1994, Fonge submitted a second application for insurance on behalf of Newton to a different division of United and failed to indicate Newton's medical history. United declined Newton's second application on October 20, 1994. Because Fonge submitted a second application without [*3] medical information after the first application had been denied for medical reasons, United's chief underwriter contacted Wooldridge by letter dated November 9, 1994, and requested his assistance in investigating a potential underwriting violation. On November 25, 1994, Wooldridge responded that he had investigated the potential violation and confirmed that Fonge "knew the application dated 6-1-94 was declined due to medical reasons before submitting the second application dated 9-94." He recommended terminating Fonge. On December 13, 1994, Wooldridge terminated Fonge's employment with United. Regional Vice-President Smith informed Fonge that he was terminated for the underwriting violation involving Newton.

Fonge had been diagnosed with diabetes in 1992, and began taking medication to control his blood sugar. Fonge informed Wooldridge of his condition, but contin-

1998 Tex. App. LEXIS 6421, *

ued to work at his sales job without any apparent impairment. In the spring of 1994, Fonge's diabetic condition worsened and, on November 29, 1994, Fonge's doctor drafted a letter stating that Fonge could not drive because he experienced dizziness due to variations in his blood sugar and concluding that, at present, Fonge [*4] was unable to work at his job. Fonge sent the letter to United's home office in Chicago by certified mail, return receipt requested. United received the letter on December 8, 1994. Five days later, Fonge was terminated.

Fonge filed suit against United, and Wooldridge and Smith individually, alleging violations of *Section 21.051 of the Labor Code*, intentional infliction of emotional distress, and negligent hiring and supervision. United moved for summary judgment on the following grounds:

> 1. Wooldridge and Smith had no individual liability under *Section 21.051 of the Labor Code* because they were not Fonge's employers; [1]
>
> 2. Fonge could not make a prima facie case of discrimination against United because he is not disabled and was not terminated for his alleged disability;
>
> 3. Fonge could not recover under a theory of intentional infliction of emotional distress because United's conduct was not extreme or outrageous and Fonge did not suffer severe emotional distress; and
>
> 4. Fonge could not prevail on his claim of negligent hiring and supervision because summary judgment proof establishes that United made reasonable inquiries into the competence and qualifications [*5] of Smith and Wooldridge and there was no nexus between Fonge's termination and the negligent hiring or supervision of Smith and Wooldridge.

Without specifying its grounds, the trial court granted United's motion for summary judgment and entered a take nothing judgment against Fonge.

> 1   In his response to United's motion for summary judgment, Fonge conceded that Wooldridge and Smith were not liable in their individual capacities under *Section 21.051 of the Texas Labor Code*.

Standard of Review The Texas Supreme Court has clearly articulated [HN1] the appropriate standard to be followed when reviewing a summary judgment:

> 1. the movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law;
>
> 2. in deciding whether a disputed material fact issue precludes summary judgment, the court must take evidence favorable to the non-movant as true; and
>
> 3. the court must indulge every reasonable inference in favor [*6] of the non-movant and resolve any doubts in its favor.

*See Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985); Griffin v. Methodist Hosp.; 948 S.W.2d 72, 74* (Tex. App.--Houston [14th Dist.] 1997, no writ). [HN2] A defendant moving for summary judgment has the burden of demonstrating that there are no material fact issues concerning plaintiff's claims. *See Anderson v. Snider, 808 S.W.2d 54, 55 (Tex. 1991); Griffin, 948 S.W.2d at 74.* A defendant meets this burden by submitting competent summary judgment proof that negates, as a matter of law, at least one element of the plaintiff's cause of action. *See Anderson, 808 S.W.2d at 55; Griffin, 948 S.W.2d at 74.* Where, as here, the summary judgment order does not specify the grounds upon which summary judgment was granted, the reviewing court will affirm the judgment if any of the theories advanced in the motion is meritorious. *See State Farm Fire & Casualty Co. v. S.S. 858 S.W.2d 374, 380 (Tex. 1993); Carr v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989); Paradigm Ins. Co v. Texas Richmond Corp., 942 S.W.2d 645, 649* (Tex. App.--Houston [14th Dist.] 1997, writ denied).

Disability Discrimination [*7]   Under *Section 21.051 of the Texas Labor Code*

In his first point of error, Fonge contends the trial court erred in granting United's motion for summary judgment because his pleadings and summary judgment proof raise a fact issue as to whether he established a prima facie case of disability discrimination under *Section 21.051 of the Texas Labor Code*. [HN3] *Section 21.051* provides, in pertinent part, that an employer may not discriminate against an individual because of his or her disability. *See TEX. LAB. CODE ANN. § 21.051(1)* (Vernon 1996). *Section 21.051* falls within the Texas Commission on Human Rights Act as codified in chapter 21 of the Texas Labor Code. *See TEX. LAB. CODE ANN. §§ 21.001 through 21.262* (Vernon 1996). Chapter 21 has among its express purposes the execution of the

policies of Title VII of the Civil Rights Act of 1964 and Title I of the Americans with Disabilities Act of 1990 and their subsequent amendments. *See id. § 21.001(1), (3).* [HN4] Because Texas has little interpretative case law, and because chapter 21 is meant to promote federal civil rights policy, Texas courts look to analogous federal law in interpreting chapter 21 when appropriate. *See Austin* [*8] *State Hosp. v. Kitchen, 903 S.W.2d 83, 87-88* (Tex. App.--Austin 1995, no writ). In this instance, the most closely analogous federal law prohibiting employment discrimination based on disability is the Americans with Disabilities Act (ADA) as codified at *42 U.S.C. § 12101. See id. at 88 & n.7.*

[HN5] Federal courts apply a burden-shifting analysis to determine whether a plaintiff has established an actionable employment discrimination claim. *See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07, 125 L. Ed. 2d 407, 113 S. Ct. 2742 (1993); Gold v. Exxon Corp., 960 S.W.2d 378, 380* (Tex. App.--Houston [14th Dist.] 1998, no writ). Texas courts apply the same analysis to employment discrimination claims under *Section 21.051 of the Labor Code. See Kitchen, 903 S.W.2d at 90-91.* Under this analysis, an employee bears the initial burden to present a prima facie case of discrimination. *See Hicks, 509 U.S. at 506; Gold, 960 S.W.2d at 381.* Once established, a prima facie case creates a presumption that the employer unlawfully discriminated against the employee. *See Hicks, 509 U.S. at 506-07.* To rebut the presumption, the employer must produce evidence that it took [*9] the adverse employment action for a legitimate, nondiscriminatory reason. *See id.* The employee must then demonstrate that the employer's articulated reason is merely a pretext for unlawful discrimination. *See Gold, 960 S.W.2d at 381.* Although the burden of production shifts, the burden of persuasion remains continuously with the employee. *See Kitchen, 903 S.W.2d at 91.*

In its motion for summary judgment, United asserted that Fonge failed to establish a prima facie case of disability discrimination because Fonge was neither "disabled" as defined by the statute nor qualified for the job. Specifically, United claimed Fonge was not qualified because his position as a sales representative was based upon honesty and trust, and Fonge violated that trust by knowingly committing an underwriting violation. Alternatively, United asserted that, even if Fonge could establish a prima facie case of discrimination, United had offered a legitimate, nondiscriminatory reason for the termination and Fonge had failed to show that the reason given was merely a pretext for disability discrimination.

[HN6] To establish a prima facie case of discrimination on an ADA claim, a plaintiff must establish [*10] that (1) he has a disability, (2) he was qualified for the job, and (3) the negative employment action occurred solely because of the disability. *See Sherrod v. American Airlines, Inc., 132 F.3d 1112, 1119 (5th Cir. 1996).* Assuming *arguendo* that Fonge established a prima facie case of disability discrimination, [2] the burden then shifted to United to offer proof of a legitimate, nondiscriminatory reason for the termination. *See Hicks, 509 U.S. at 506-07.* United presented extensive summary judgment proof that it terminated Fonge because he committed an underwriting violation and not because of his disability. Included in its summary judgment proof are: (1) correspondence between Wooldridge and Smith in November, 1994, discussing Fonge's underwriting violation and recommending his termination; (2) affidavits from the same persons describing the investigation and the sequence of events leading up to Fonge's termination; (3) additional correspondence and insurance policies evidencing the underwriting violation; (4) Fonge's deposition testimony conceding his knowledge of United's policy to terminate employees for knowingly omitting medical history on an application; and (5) [*11] Fonge's deposition testimony admitting he received notice that Newton's first application had been denied. United's summary judgment proof that it terminated Fonge for an underwriting violation rebutted any presumption of discrimination and shifted the burden to Fonge to show that the reason proffered was a mere pretext for disability discrimination. *See Gold, 960 S.W.2d at 381.* At this point, Fonge was required to expressly present any reasons seeking to avoid summary judgment in United's favor, and support those reasons with summary judgment proof sufficient to establish a fact issue. *See Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995).*

2   Disability under chapter 21 means, "with respect to an individual, a mental or physical impairment that substantially limits at least one major life activity of that individual, a record of such an impairment, or being regarded as having such an impairment." *TEX. LAB. CODE ANN. § 21.002(6)* (Vernon Supp. 1998). The parties dispute, and federal and state courts disagree on, whether insulin-dependent diabetes is a disability as a matter of law. *See 29 C.F.R. § 1630.2(j),* App. (1995) (stating as an example that "a diabetic who without insulin would lapse into a coma would be substantially limited because the individual cannot perform major life activities without the aid of medication"); *Turco v. Hoechst Celanese Corp., 101 F.3d 1090, 1093 (5th Cir. 1996)* (stating no dispute that insulin-dependent diabetic was disabled); *but see Coghlan v. H.J. Heinz Co., 851 F. Supp. 808, 813 (N.D. Tex. 1994)* (stating Equal Employment Opportunity Commission's gloss of insulin-dependency diabe-

1998 Tex. App. LEXIS 6421, *

tes is at odds with ADA); *Norwood v. Litwin Engineers & Constructors, Inc.*, 962 S.W.2d 220, 224 (Tex. App.--Houston [1st Dist.] 1998, writ denied) (analyzing whether diabetic is disabled under ADA); *Hearne v. AmWest Sav. Ass'n*, 951 S.W.2d 950, 953 (Tex. App.--Fort Worth 1997, no writ) (holding "insulin-dependency alone does not render a diabetic per se disabled under the ADA"). In this case, however, we need not address the disability issue because United established its entitlement to summary judgment on other grounds.

[*12] In response to United's motion for summary judgment, Fonge asserted that he had a disability and was qualified for the job, thus addressing only the first two elements of his prima facie case. Fonge did not address United's alternative argument that it had offered a legitimate, nondiscriminatory reason for the termination which Fonge had failed to rebut by showing pretext. Nevertheless, we will review Fonge's summary judgment proof to determine whether a genuine issue of material fact exists as to whether United's articulated reason for Fonge's termination was merely a pretext for disability discrimination.

Fonge claims that he was an outstanding employee, the underwriting violation was an honest mistake, and other employees who had made honest mistakes had not been terminated. According to Fonge's affidavit and deposition testimony, he knew that an agent's knowing omission of medical information on an application was grounds for termination. However, Fonge contends it was United's policy to issue a warning the first time an employee violated an underwriting policy if he acted without knowledge of the inaccuracy. Fonge claims he simply did not recognize at the time he wrote the [*13] second policy that Newton had been previously denied coverage, even though he acknowledged receiving written notice from United that Newton's first application had been denied. Fonge concludes that his longevity with the company and his outstanding performance record, together with his alleged lack of awareness concerning the underwriting violation, created a material fact issue as to "whether [Fonge] knowingly violated any policy of [United] related to underwriting."

Regardless of Fonge's mental state concerning the underwriting violation, the record is devoid of proof that the reason given for Fonge's termination was pretextual. Fonge presented no competent summary judgment proof that he was treated differently than any other employee who committed the same type of underwriting violation. In fact, Regional Vice-President Smith testified that he had never given a warning for an underwriting violation similar to that committed by Fonge. Rather, a warning is issued in those situations where there is a disparity in

medical information attributable to false information provided by the applicant which the employee would not have been able to discern. Wooldridge testified that he determined [*14] from United's investigation that Fonge knew about the denial of the first application when he wrote the second application. Therefore, Fonge's termination for violating the underwriting policy was proper under established company policy. Whether United conducted a reasonable investigation or whether United made a sound business decision in terminating Fonge is beyond the scope of this court's review. [HN7] "Discrimination and retaliatory laws were not intended to be vehicles for judicial second guessing or employment decisions, nor were they intended to transform the courts into personnel managers." *E.E.O.C. v. MCI Telecommuns. Corp.*, 820 F. Supp. 300, 309 (S.D. Tex. 1993) (citing *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955 (5th Cir. 1993)). Fonge's subjective belief that he was treated differently is insufficient to establish that his termination was a mere pretext for disability discrimination. [3] *See Farrington v. Sysco Food Services, Inc.*, 865 S.W.2d 247, 251 (Tex. App.--Houston [1st Dist.] 1993, writ denied). Because Fonge failed to present competent summary judgment proof to show that the reason offered by United for his termination was merely pretext, summary judgment [*15] was proper as to Fonge's disability claim. Accordingly, we overrule Fonge's first point of error.

> 3   Fonge seems to infer that the underwriting violation was pretextual because United had an employee from its Chicago office present in Houston on the day of his termination to conduct a field audit of Fonge's accounts. Wooldridge could not remember another occasion when an employee outside the district conducted such an audit. Fonge fails to explain, however, how the employee's presence indicates that the articulated reason was a pretext for discrimination.

Intentional Infliction of Emotional Distress

In his second point of error, Fonge contends the trial court erred in granting summary judgment on his claim of intentional infliction of emotional distress. Fonge contends United's conduct was extreme and outrageous because of the manner in which it conspired to terminate his employment despite his worsening disability, particularly in light of the longevity of his employment with United and the many honors and [*16] awards conferred upon him. Fonge claims he experienced severe emotional distress as a result of the termination.

[HN8] Not every employment dispute gives rise to a cause of action for intentional infliction of emotional distress. *See Dalrymple v. Univ. of Texas Syst.*, 949 S.W.2d 395, 403 (Tex. App.--Austin 1997, writ granted); *Miller v. Galveston/Houston Diocese*, 911 S.W.2d 897,

900-01 (Tex. App.--Amarillo 1995, no writ). Some facts do give rise to the cause in the employment context. *See Wornick Co v. Casas, 856 S.W.2d 732, 735 (Tex. 1993).* In such cases, the plaintiff must prove that (1) the defendant acted intentionally or recklessly, (2) the conduct was extreme and outrageous, (3) the defendant's actions caused him emotional distress, and (4) the resulting emotional distress was severe. *See Twyman v. Twyman, 855 S.W.2d 619, 621 (Tex. 1993).* Liability for outrageous conduct is found only where the conduct is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community. *See Mattix-Hill v. Reck, 923 S.W.2d 596, 597 (Tex. 1996); see also RESTATEMENT [*17] (2ND) TORTS § 46, cmt. d* (1965). The court makes the initial determination whether, as a matter of law, a defendant's conduct may reasonably be regarded as extreme and outrageous. *See Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994).*

[HN9] "Subject to certain narrow exceptions, employees in Texas may be terminated at will and without cause." *See Wornick, 856 S.W.2d at 735; Sabine Pilot Serv., Inc. v. Hauck, 687 S.W.2d 733, 734 (Tex. 1985).* Moreover, the fact of discharge itself cannot constitute outrageous behavior as a matter of law unless the discharge falls within one of the exceptions to the termina-

tion-at-will doctrine. *See Wornick Co., 856 S.W.2d at 735.* A violation of *Section 21.051 of the Labor Code* is an exception to the termination-at-will doctrine. *See Sabine Pilot Serv., 687 S.W.2d at 734.* Fonge, however, failed to defeat United's entitlement to summary judgment on his disability discrimination claim by showing that United's reason for terminating him was merely a pretext for disability discrimination in violation of *Section 21.051.* Therefore, the fact that United discharged Fonge after many years of service and with knowledge of his diabetic [*18] condition does not constitute outrageous and extreme conduct as a matter of law. Because United defeated Fonge's claim of intentional infliction of emotional distress, the trial court did not err in granting summary judgment in its favor. Therefore, we overrule Fonge's second point of error.

The judgment of the court below is affirmed.

/s/ Harriet O'Neill

Justice

Judgment rendered and Opinion filed October 1, 1998.

Panel consists of Chief Justice Murphy, Justices Hudson and O'Neill.